Gabriel I. PREDA, Plaintiff–Appellant,

v.

NISSHO IWAI AMERICAN CORPO-
RATION, Defendant–Appellee.

No. 916, Docket 96–7555.

United States Court of Appeals,
Second Circuit.

Argued March 10, 1997.

Decided Nov. 10, 1997.

Gabriel I. Preda, Pro Se, New York City,
for Plaintiff–Appellant.

David I. Rosen, New York City (Clifton
Budd & DeMaria, LLP, New York City, of
Counsel), for Defendant–Appellee.

Before: JACOBS, LEVAL, and
CABRANES, Circuit Judges.

PER CURIAM:

Gabriel I. Preda appeals from the grant of summary judgment by the United States District Court for the Southern District of New York (Martin, J.) in favor of Nissho Iwai American Corporation ("Nissho"). His complaint alleged, in part, that (1) Nissho took adverse employment action against him motivated by discrimination on the basis of race and national origin and in retaliation for his complaints of race and national origin bias, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and (2) Nissho failed to reinstate him following his honorable discharge from military service in violation of the Veterans' Reemployment Rights Act, 38 U.S.C. § 4301 *et seq.* (1993) (the "VRRA").[1] The district court dismissed Preda's Title VII claims, concluding that Preda had failed to show adverse employment action. *Preda v. Nissho Iwai American Corp.*, No. 94 Civ. 6773, 1996 WL 109064, at *5–6 (S.D.N.Y. Mar.12, 1996). It dismissed the VRRA claim based on a finding that Preda had not resigned his position at Nissho in order to enter military service and that Preda's vitriolic resignation letter to the president of Nissho rendered him no longer qualified to perform the duties of his prior position under 38 U.S.C. § 4301(a)(2)(B)(i) (1993). *Id.* at *6–7.

As to the dismissal of the VRRA claim, we affirm. As to the dismissal of Preda's Title VII claim, we vacate the judgment and remand.

### Background

Preda is a naturalized American citizen whose country of origin is Romania. In 1988, he was hired as an office assistant by a wholly-owned Nissho subsidiary, Nissho Iwai Service America, Inc. ("NISA"). Beginning in 1989, Preda learned of various memoranda written by a NISA manager that Preda believed demonstrated bias against minorities, women, older employees, and Americans in

general. Preda voiced his objections to several managers, including the executive vice president of NISA, Mr. Ueda.

Preda claims that in the months after his complaints, Ueda excluded him from departmental meetings and outings with clients. Although Preda had previously spent a substantial portion of his time working on Eastern European business development, his duties became largely clerical. Ueda returned to Japan in February 1990. Preda asserts that the discrimination and retaliation continued under Ueda's replacement, Mr. Yasujima.

Preda requested a transfer to another position at Nissho. He asserts that Yasujima told him that no transfer would be granted because of Preda's insolence in complaining about the memoranda. In June 1990, Preda received his job performance evaluation. Preda's immediate supervisor gave him marks of "outstanding." Yasujima, the department head, crossed out all "outstanding" marks and replaced them with "good" or "fully satisfactory." He also replaced the supervisor's comments with his own, including the remark that Preda was "sometimes very eccentric."

In July 1990, Preda filed a complaint with the Equal Employment Opportunity Commission alleging that he was wrongfully denied a transfer in retaliation for his complaints of bias. Preda elaborated on his claims in a six-page affidavit in which he described being excluded from departmental meetings and client outings, recounted the downgrading of his evaluation, and noted the adverse change in his job duties. Preda simultaneously filed a claim with the New York State Division of Human Rights.

Preda was offered a lateral transfer to Nissho's realty and construction department in August 1990. As a condition of transfer he was required to sign a "confidentiality agreement." Preda claims that he was told

---

**1.** The reemployment provisions of the VRRA were amended by enactment of the Uniformed Services Employment and Reemployment Rights Act in 1994, and were recodified at 38 U.S.C. § 4311 *et seq. See* Pub.L. No. 103–353, 108 Stat. 3149, 3153 (1994). However, the VRRA continues to govern the treatment of claims arising with respect to reemployment initiated before the end of the 60–day period beginning on Oct. 13, 1994, the day the new Act went into effect. *See* 38 U.S.C. § 4301 (1997) (revision note).

by a manager of Nissho's personnel department that he was being asked to sign the agreement because of his past complaints of bias. Nissho contends that the confidentiality agreement requirement was imposed at the request of a new customer. All other non-managerial employees of the realty and construction department were required to sign the confidentiality agreement. Preda refused to sign, and the transfer offer was withdrawn.

On October 12, 1990, Preda enlisted in the Army. On November 2, he resigned his employment with NISA in an eight-page letter to the president of Nissho. Preda's letter included a long discussion of "THE SYSTEM" of "Japan, Inc.," and its use of "suppressive means." Preda compared aspects of Japanese society to Nazi Germany and Communist-era Romania; he described the Japanese educational system as "early stage brain washing." He went on to criticize the politics, bureaucracy, language, media, judicial system, and culture of Japan. Preda's letter concluded with a warning to Nissho's president that the "exponents of THE SYSTEM" were working overtime at Nissho "to bend the will of citizens of USA." Preda asserted that "[t]he exodus of the disappointed and disgruntled local staff [of Nissho] should signal to management the same ideas as it did to the communist dictatorships."

One week after his resignation, Preda reported for active duty with the United States Army. Preda served in the Army until his honorable discharge in early 1992. In November 1991, Preda wrote to Nissho requesting reinstatement to his former position. Nissho informed Preda that it would not reinstate him because he had not resigned in order to perform military service and because his resignation letter constituted cause for termination and rendered him unqualified for reinstatement.

On August 22, 1994, Preda filed a *pro se* complaint in the district court charging Nissho with violations of Title VII and the VRRA. Summary judgment was entered in favor of Nissho on all counts.

On appeal, Preda challenges the district court's grant of summary judgment. The district court dismissed the Title VII action on the grounds that Preda failed to show that he suffered an adverse employment decision. We believe Preda raised an issue of material fact on the current record as to whether he suffered adverse employment action. We therefore vacate the grant of summary judgment on Preda's Title VII claim and remand for further proceedings. We affirm the district court's grant of summary judgment on Preda's VRRA claim on the basis that his resignation letter demonstrated that Preda was no longer qualified for employment with Nissho. We have considered Preda's other arguments and find them to be without merit, and therefore affirm the district court's judgment in all other respects.

### 1. *Title VII Claims*

■ The district court believed Preda had not shown an issue of material fact as to whether he suffered adverse employment action, which is necessary to establish a claim of discrimination. *See Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 633 (2d Cir.1996), *cert. denied*, ––– U.S. –––, 117 S.Ct. 1083, 137 L.Ed.2d 218 (1997). We respectfully disagree. Preda asserts that after he made complaints of bias he was excluded from all departmental meetings and client outings. He asserts that his job duties and responsibilities were downgraded in retaliation, and his position was reduced to largely clerical tasks.

■ Title VII prohibits discrimination with respect to "terms, conditions, or privileges of employment." 42 U.S.C. § 2000e2(a)(1). The prohibition against discrimination is not limited to "pecuniary emoluments," but includes discriminatorily-motivated diminution of duties. *See de la Cruz v. New York City Human Resources Admin. Dep't of Soc. Serv.*, 82 F.3d 16, 21 (2d Cir. 1996); *Rodriguez v. Board of Educ.*, 620 F.2d 362, 366 (2d Cir.1980). On the current record, we believe Preda has raised a material question of fact about whether the terms of his employment were adversely affected in retaliation for protected activity. We therefore vacate the district court's grant of summary judgment on Preda's claim under Title VII to the extent that the ruling was based

on his failure to show genuine issues of material fact with respect to adverse employment action.[2]

■ On the other hand, we affirm the district court's dismissal of Preda's claim based on the confidentiality agreement he was required to sign as a condition of transfer to the real estate department. The district court characterized the requirement that Preda sign a confidentiality agreement as "common" and "not unreasonable," and therefore not an adverse action. *Preda,* 1996 WL 109064, at *5. We need not consider whether an otherwise-reasonable requirement could constitute an adverse action if selectively imposed for a discriminatory or retaliatory purpose. It is not disputed that all non-managerial employees of Nissho's realty and construction department were required to sign the same confidentiality agreement presented to Preda. Preda cannot demonstrate that in this respect he was treated in any way differently than similarly-situated employees.[3] His claim with respect to the confidentiality agreement thus fails as a matter of law.

### 2. *VRRA Claim*

Under the VRRA, an employee who leaves his job "in order to perform" active duty in the armed forces is entitled to reinstatement after honorable discharge "if still qualified to perform the duties of such position." *See* 38 U.S.C. §§ 4301(a), 4301(a)(2)(B)(i), 4304(a) (1993).

■ We agree with the district court that Preda's resignation letter rendered him no longer qualified for employment with Nissho. Preda's letter displayed serious hostility toward Nissho, both as a company and as an example of Japanese culture, business practices, and social mores. It compared various aspects of Japanese business, in general, and Nissho's operations, in particular, to Mussolini's Italy, Nazi Germany, and Communist

Romania. Preda suggested that Nissho would fail just as the East German dictatorship failed "by the mandate of God, people and history."

Courts have unanimously held that in order for a veteran to be "qualified" to return to a prior position, under the meaning of the VRRA and predecessor laws which protected veterans' re-employment rights, the veteran must be not only physically capable of returning to the job but also temperamentally willing and able to work harmoniously with co-workers and supervisors. *See, e.g., Green v. Tho–Ro Prods., Inc.,* 232 F.2d 172, 174–76 (3d Cir.1956); *Trusteed Funds, Inc. v. Dacey,* 160 F.2d 413, 420–21 (1st Cir.1947); *Winfree v. Morrison Inc.,* 762 F.Supp. 1310, 1313 (E.D.Tenn.1990).

■ Job-related behavior inconsistent with loyalty to the employment relationship is a basis for terminating a veteran's employment. *Cf. Carter v. United States,* 407 F.2d 1238, 1246 (D.C.Cir.1968). The VRRA should not be interpreted to forbid consideration of the same factors in determining whether the former employee is still qualified for employment. The statute is not intended to protect veterans' jobs in any and all circumstances; "protection . . . is based upon the veteran's compliance with the reasonable and ordinarily accepted standards of personal conduct and performance of duty of all employees." *McCormick v. Carnett–Partsnett Sys., Inc.,* 396 F.Supp. 251, 256 (M.D.Fla.1975).

Preda's resignation letter, both in its content and tone, precluded harmonious future relations with co-workers and managers at Nissho. His letter reflected disgust and contempt for his former employer. His expressed antipathy towards Japan and Japanese culture and language would inevitably be disruptive in light of the large numbers of employees of Nissho who are Japanese na-

---

**2.** Of course Nissho is free to adduce additional evidence regarding its treatment of Preda and renew its motion for summary judgment. Nissho might, for example, disprove Preda's allegations of downgrading and exclusion, or show that clerical duties were always present in Preda's job so that the assignments of which he complains were not a downgrading and that the exclusions

were not retaliatory or were justified. Such evidence might warrant grant of summary judgment on a renewed motion.

**3.** Preda does not argue that the confidentiality agreement was a facially neutral policy with an impermissible disparate impact.

tionals or of Japanese origin. We agree with the district court that Preda's resignation letter made him no longer qualified to work for Nissho within the meaning of 38 U.S.C. § 4301(a)(2)(B)(i). We therefore affirm the district court's grant of summary judgment in favor of Nissho on the VRRA claim.

*Conclusion*

The dismissal of the claim under the VRRA is affirmed. The dismissal of the claim under Title VII to the extent predicated on the requirement that Preda sign a confidentiality agreement is also affirmed. To the extent the Title VII claim was dismissed for failure to show other adverse employment action, the judgment is vacated and the case remanded for further proceedings.