**Donna PARRISH, Plaintiff,**

**v.**

**Louis SOLLECITO, Individually, James Gallagher, Individually, Mount Kisco Import Cars, Ltd. d/b/a Mount Kisco Honda, and Westchester Import Cars, Ltd, d/b/a/ Acura of Bedford Hills, Defendants.**

**No. 01 Civ. 5420.**

United States District Court, S.D. New York.

April 15, 2003.

---

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Plaintiff.

Andrea Elizabeth Sacco, Wade Clark Mulcahy, New York, NY, Martin Gringer, P.C., Garden City, NY, Philip Touitou, Ohrenstein & Brown LLP, New York, NY,

Joshua Adam Marcus, Franklin & Gringer, P.C., Garden City, NY, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

During the trial of this matter, after plaintiff Donna Parrish ("Parrish") completed presentation of her case in chief, defendants, Louis Sollecito ("Sollecito"), James Gallagher ("Gallagher"), Mount Kisco Honda ("Honda") and Acura of Bedford Hills ("Acura") (collectively, "Defendants"), moved this Court for an order pursuant to Rule 50(a) of the Federal Rules of Civil Procedure for judgment as a matter of law. The Court heard arguments from the parties on April 8, 2003 and reserved judgment on the motion until after Defendants presented their case, indicating that it would set forth its findings, conclusions and reasoning following the jury's verdict. On April 11, 2003, the jury returned a verdict of liability against Sollecito, Gallagher and Acura on Parrish's retaliation claim, but found for Defendants on Parrish's sexual harassment hostile work environment claim. The jury awarded Parrish $15,000 in compensatory damages and $500,000 in punitive damages.

■ At this time, the Court will address the Defendants' Rule 50(a) motion on the issue of whether sufficient evidence was presented by Parrish to support the jury's verdict of liability against Acura, Sollectio and Gallagher for retaliation in violation of Title VII of the Civil Rights Act of 1964 and under section 296 of the New York State Human Rights Law ("NYHRL").[1]

---

1. Defendants also moved for a Rule 50(a) judgment on the issue of damages. With regard to Defendants' contention concerning the lack of evidence supporting Parrish's emotional distress claim, the jury verdict has made the issue moot, since no damages were awarded for emotional distress. Defendants also contended that Parrish provided insufficient evidence at trial concerning lost wages. However, Parrish testified as to her lost wages, as did Gallagher during his direct testimony. Testimonial evidence concerning lost wages is a sufficient basis for a jury to award damages.

## I. DISCUSSION

### A. STANDARD OF REVIEW

Rule 50(a) of the Federal Rules of Civil Procedure allows a party to move for judgment as a matter of law at any time before the case has been submitted to the jury. *See Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 134 (2d Cir.1999). A motion filed pursuant to Rule 50(a) may be granted if a legally sufficient evidentiary basis to support the non-moving party's claim or defense is absent from the record. *See* Fed.R.Civ.P. 50(a); *Wimmer,* 176 F.3d at 134; *Piesco v. Koch,* 12 F.3d 332, 340 (2d Cir.1993); *Sanders v. The City of New York,* 200 F.Supp.2d 404, 406 (S.D.N.Y. 2002). In assessing the merits of a Rule 50(a) motion, courts must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Wimmer,* 176 F.3d at 134; *Piesco,* 12 F.3d at 340; *Sanders,* 200 F.Supp.2d at 406.

### B. ELEMENT OF CAUSATION IN CLAIM OF RETALIATION

■ Under Title VII and the NYHRL, it is unlawful for an employer to discriminate against any individual because such individual has opposed any act or practice made an unlawful employment practice or because such individual participated in opposing an unlawful employment practice. 42 U.S.C. § 12203(a); *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002); *Carter v. Rosenberg & Estis,* No. 95 Civ. 10439, 1998 WL 150491, at *5 (S.D.N.Y. March 31, 1998). To prevail on a claim of retaliation under Title VII, a plaintiff must provide sufficient evidence to establish a *prima facie* case comprised of the following elements: (1) participation in a protected activity; (2) knowledge by the employer of the employee's protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *See Wimmer v. Suffolk County Police Dept.,* 176 F.3d 125, 134 (2d Cir.1999); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1988). As the jury in this case found, a plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not found to be unlawful, so long as plaintiff demonstrates that she possessed a good faith, reasonable belief that the underlying conduct was unlawful. *See Sarno v. Douglas Elliman—Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir.1999).

■ In the instant Rule 50(a) motion, Defendants attack the sufficiency of the evidence presented by Parrish with regard to the fourth element of the retaliation claim she alleges. Specifically, Defendants argue that there is no evidence in the record indicating that following the incident that allegedly occurred at the funeral reception for Sollecito's father in July 2000, either Parrish or Tom Murray ("Murray"), the general manager of Mount Kisco Honda at that time, spoke to Sollecito or anyone else at the two dealerships about the incident. According to Defendants, the only complaint to Sollecito that is alleged occurred in March of 2000. Since Parrish's termination from Acura occurred in April 2001, approximately thirteen months from the date of the only alleged complaint, Defendants argue that the time lag between the complaint and the termination is too long to support the causal connection necessary for a claim of retaliation.

Defendants motion must be denied because their argument does not accurately reflect the entire testimony in the record relating to this issue and because it does not consider all the possible retaliatory acts Parrish alleged that the jury may reasonably consider to be adverse employment actions.

In order to establish the causal connection between an adverse employment action and a protected activity, Parrish must demonstrate at trial that the allegedly adverse actions occurred in circumstances from which a reasonable jury could infer retaliatory intent. A plaintiff may prove that retaliation was a motivating factor behind an adverse employment action either "(1) indirectly, by showing that the protected activity was followed closely be discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). A close temporal relationship between a plaintiff's participation in a protected activity and an employer's adverse action is alone sufficient to establish causation, without direct evidence in support. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir.2001). In this regard, the Supreme Court has determined that if temporal proximity alone is the basis for determining a causal connection, it must be very close. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273–274, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). However, where there is direct evidence concerning the causal relationship, the standard concerning proximity is relaxed. Under some circumstances, retaliatory intent may also be shown in conjunction with the plaintiff's *prima facie* case, by sufficient proof to rebut the employer's proffered reason for the termination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143–149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In this case, Parrish testified that Sollecito visited Acura the Wednesday after the July incident and that she purposely came to the dealership after having surgery to speak with him about Gallagher.

When Sollecito asked her how she was doing, she testified that she replied, "Well it's not good ... I'm still having a very big problem with Mr. Gallagher." (Trial Transcript ("Tr.Trans.") at 42.) In response, Sollecito told her not to worry about it, that he would talk to Gallagher. Parrish testified that when she tried to further elaborate, Sollecito refused to listen and changed the subject. (*Id.*)

While there is some ambiguity as to Parrish's intention when she indicated there was a "problem" with Gallagher, a reasonable juror could infer from the timing of the alleged conversation just days following the July harassment incident Parrish described, that since Parrish testified that she had previously complained to Sollecito about Gallagher's inappropriate behavior in March, that Sollecito understood that Parrish was referring to harassing behavior and not to regular workplace problems.

Furthermore, additional circumstantial evidence concerning the causal relationship between this complaint in July and Parrish's termination was elicited at trial. Sollecito testified that he began to consider terminating Parrish from her job at Acura six to eight months prior to April 2001. (Tr. Trans. at 247.) Since Sollecito testified that he may have begun discussing Parrish's termination as much as eight months prior to April 2001, around July 2000, there is sufficient evidence in the record concerning temporal proximity to support a causal connection between the complaint alleged in July 2000 and Parrish's termination in April 2001. *See Quinn*, 159 F.3d at 769 (two months between protected activity and allegedly adverse action sufficient to establish causation); *Richardson v. New York State Dept. of Correctional Serv.*, 180 F.3d 426, 446–447 (2d Cir.1999). Although the actual termination occurred nine months later, a

time-period without further evidence that would be too long to support a retaliation claim, *see Breeden*, 532 U.S. at 273–274, 121 S.Ct. 1508, given Sollecito's testimony concerning when he began to contemplate the adverse employment, the time lag is not dispositive. Accordingly, on this basis alone, a rational jury could find a sufficient causal connection between Parrish's protected activity—complaining about Gallagher's conduct to Sollecito—and an adverse employment action, her termination from Acura.

Moreover, in its Decision and Order denying Defendant's motion for summary judgment, the Court did not rely on the employment termination nine months after the alleged complaint in July, as Defendants seem to allege, but rather referred to Parrish's allegations that after she complained to Sollecito in March, Gallagher took adverse employment actions against Parrish by instructing his sales staff not to deal with Parrish, thereby depriving her of commissions by having his sales force contact customers directly to arrange for after-sale services ordinarily performed by Parrish. *See Parrish v. Sollecito*, 249 F.Supp.2d 342, 354 (S.D.N.Y.2003). Parrish alleges that such actions materially diminished her job duties and lowered her income. The Court held that "insofar as such actions would materially diminish Parrish's job duties and lower her income and opportunities for advancement within the company, they would constitute sufficient adverse employment actions." *Id.* (citing *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

■■■ The standard for determining an adverse employment action is whether it caused a "materially adverse change in the terms, privileges, duration and conditions of employment." *Treglia*, 313 F.3d at 720. In order for an action to be considered materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000) (internal citations omitted). A material adverse change is one that " 'has an attendant negative result, a deprivation of a position or an opportunity.' " *Sank v. The City Univ. of New York*, No. 94 Civ. 0253, 2003 WL 1826109, at *10 n. 24 (S.D.N.Y. April 4, 2003) (quoting *Campbell v. Grayline Air Shuttle Inc.*, 930 F.Supp. 794, 802 (E.D.N.Y.1996)). A reduction in pay has been determined to be an adverse employment action. *See Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999). Furthermore, non-pecuniary sanctions such as negative employment evaluation letters may also be considered adverse. *Morris*, 196 F.3d at 110; *Preda v. Nissho Iwai Am. Corp.*, 128 F.3d 789, 791 (2d Cir.1991). Accordingly, if the jury believes that Gallagher directed his sales force to refrain from delivering folders to Parrish, and that Parrish suffered from this failure both in terms of the extent of her commissions and in terms of her ability to perform her job well, an adverse employment action could be found by a reasonable jury.

Parrish testified that after she complained to Sollecito in March 2000, the salespeople at Acura, where Gallagher was the general manager, stopped cooperating with her. (*See* Tr. Trans. at 39.) Parrish went on to explain that, after she complained about Gallagher's alleged sexual harassment, she was not provided sales folders from the salespeople, which would cause customers to have their car deliveries delayed and ultimately hamper her ability to perform her job and receive commissions for after-sale products.

Defendants' witness, Cheryl Slater ("Slater"), who was a salesperson at Acura during the relevant time-period, confirmed

that at some point, because of problems the salespeople were having with Parrish, folders were delivered directly to the billing department, bypassing Parrish's responsibilities with regard to after-sales and thereby potentially frustrating her ability to make commissions from these sales. (*See* Tr. Trans. at 337.) In fact, Slater testified that eventually cars were delivered through the billing department without involving Parrish at all in the after-sales process. (*Id.*) Although Sollecito testified that Parrish's performance remained acceptable in terms of sales numbers, (*id.* at 253), Slater testified that quantitatively Parrish's performance remained acceptable only because of a new Acura vehicle called the "MDX", which increased Parrish's financial performance levels. (*Id.* at 339.) By inference, a jury could reasonably find that the sales force's failure to deliver folders to Parrish hurt Parrish's performance and that the only reason her performance and corresponding commissions remained acceptable was the increased sales numbers caused by the new Acura model. While Defendants attribute Parrish's difficulties to her own failures in her employment responsibilities at Acura, a reasonable jury could infer that these difficulties were precipitated by Gallagher's alleged retaliatory instruction to his sales force not to cooperate with Parrish.

Parrish's testimony concerning the effect of her complaint to Sollecito in March 2000 does not thoroughly explain how the Acura sales force's failure to deliver sales folders had a material effect on Parrish's income, job duties and opportunities for advancement. However, since Parrish testified that a large portion of her salary was based on commissions and that she needed the sales folders to contact customers to sell after-sale products, a jury could reasonably infer that the salespeople were negatively affecting her salary and performance sufficiently to constitute an adverse employment action. Moreover, if, as Parrish contended at trial, the strained relationship with Gallagher's sales force directly followed her complaint to Sollecito concerning Gallagher in March, there is sufficient temporal proximity to establish circumstantial evidence of a causal connection between Parrish's complaint in March, and her alleged deteriorating work environment at Acura soon thereafter, from which a rational jury could find retaliation.

Furthermore, Defendants contend that the actual reason Parrish was terminated from Acura was her poor working relationships with the salespeople at Acura, her inability to process deliveries at Acura efficiently because of her location at Honda and her long absences or inaccessibility presumably related to other personal distractions in her life at the time. Therefore, in a more global sense, in light of the direct relationship between Parrish's problems with the salespeople at Acura and her eventual termination from Acura, a reasonable jury could infer a causal connection between Parrish's complaints in March and July 2000 to Sollecito concerning Gallagher and her deteriorating work environment at Acura, culminating in her termination in April 2001.

There is also evidence in the record from which a reasonable jury could find disparate treatment of Parrish as compared to similarly situated employees and that Defendants stated reason for terminating Parrish was not credible. First, the record demonstrates that many of Sollecito's employees, including Parrish herself during prior employment with Sollecito, handled responsibilities for more than one dealership. In fact, Gallagher is currently the general manager of both Acura and Honda. Prior to Parrish's employment as an after-sales manager ("F & I

Manager"), and as of the time of the trial, Acura did not have an F & I Manager. Therefore, Defendants' assertion that the reason for Parrish's termination at Acura is that one employee could not handle responsibilities at two dealerships is a claim that a reasonable jury may not credit. Second, Sollecito testified that Parrish's complaints to him about the salespeople at Acura were not unusual because there was almost always friction between the salespeople and after-sale people. (*See* Tr. Trans. at 251.) In addition, Sollecito testified that even at the time she was terminated from Acura, Parrish's performance was acceptable and that he periodically expressed to Parrish that she was doing a good job. (*Id.* at 253–254.) Such evidence could support a jury finding that retaliation was a motivating factor in Parrish's termination from Acura by discrediting Acura's stated reason for Parrish's termination, *see Reeves,* 120 S.Ct. at 2109, and providing some circumstantial evidence of disparate treatment.

Finally, aside from circumstantial evidence concerning Parrish's retaliation claim, the record contains direct evidence from which a reasonable jury could find retaliation. *See Gordon,* 232 F.3d at 117. Sollecito testified that upon learning of Parrish's Equal Employment Opportunity Commission ("EEOC") claim, he confronted Parrish to inquire how she could make such a complaint against a married man with children. (*See* Tr. Trans. at 258.) Sollecito indicated that he did not find Parrish's complaint believable and that what she was doing was very "serious". (*Id.*) Sollecito's reaction is direct evidence of hostility directed towards Parrish because of her complaints. Sollecito's admitted reaction to Parrish's filing of an EEOC claim could support a jury finding that Sollecito, upon earlier hearing Parrish's complaints concerning Gallagher, could have acted in retaliation against her. In addition, Lori Rowe's ("Rowe") testimony that she felt her job was threatened when her supervisor discovered that she had assisted Parrish in recording the alleged incidents of sexual harassment, and the fact that Rowe was ultimately discharged, provides general support from which a reasonable jury could conclude that retaliatory conduct on the part of Defendants for Parrish's complaints concerning Gallagher was a motivating consideration for her discharge. (*See Id.* at 201.)

Thus, given the totality of the direct and circumstantial evidence presented at trial, there is enough support on the record from which a reasonable jury could find that Defendants Sollecito, Gallagher and Acura retaliated against Parrish for her complaints concerning Gallagher's alleged improprieties.

## *II. ORDER*

For the reasons stated above, it is hereby

**ORDERED** that Defendants' motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure is denied.

**SO ORDERED.**