Roberto **FIGUEROA REYES,**
et al., **Plaintiffs,**

v.

**HOSPITAL SAN PABLO DEL ESTE, et al., Defendants.**

No. CIV. 03–2237(JAF).

United States District Court,
D. Puerto Rico.

Sept. 2, 2005.

---

Rafael A. Oliveras–Lopez, Rafael A. Oliveras Lopez De Victoria Law Office, Caguas, PR, for Plaintiffs.

Pedro J. Manzano–Yates, Ada Nurie Pagan–Isona, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendants.

## OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs, Roberto Figueroa Reyes ("Plaintiff"), his wife Madeline Soto Pizarro, and their conjugal partnership, bring the present action against Defendants, Hospital San Pablo del Este ("HSPDE") and Universal Health Services ("UHS"), seeking relief under the Uniform Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311–33 (2002 & Supp.2005). *Docket Document No. 1.*

Defendants move for summary judgment, claiming that Plaintiffs cannot meet their prima facie burden under the USERRA. *Docket Document Nos. 51, 72.* Plaintiffs oppose. *Docket Document No. 61.*

### I.

### *Factual and Procedural Synopsis*

Unless otherwise indicated, we derive the following factual summary from the parties' statements of uncontested facts. *Docket Document Nos. 51, Exh. 2; 59, Exh. 1.*

Defendant HSPDE is a hospital located in Fajardo, Puerto Rico, and is a division of Defendant UHS. Defendant UHS's corporate offices are located in Pennsylvania.

Plaintiff, a resident of Río Piedras, Puerto Rico, worked as a graduate nurse in the intensive care ward at HSPDE since July 1, 1998. On September 2, 1999, Plaintiff became the Clinical Information Coordinator in the Finance Department at HSPDE. As Clinical Information Coordinator, Plaintiff supervised administration of the Patient Order Entry Tracking System ("POETS") computer program, which was used by doctors and nurses to manage clinical and billing information about each patient, and OPUS–OM, a computer pro-

gram used to manage billing and accounting data. Plaintiff's position required both clinical experience and computer knowledge. At all times relevant to this dispute up until March 2003, Plaintiff worked under the direct supervision of Finance Director José Laborde ("Laborde"), though according to his job description he reported to Executive Director Herman Monserrate ("Monserrate").

Since 1983, Plaintiff has served in the United States Army Reserve as an Army nurse. Throughout his career, Plaintiff's military service has required him to take leaves of absence from work which, under USERRA, he is permitted to do without suffering adverse employment action.

## A. *Military Leave Notification*

On or around February 27, 2002, Plaintiff received a military order to appear for combat support annual training. On March 11, 2002, Plaintiff notified Laborde of the military order. On March 14, 2002, Plaintiff submitted to Laborde a written request for military leave. On March 15, 2002, Plaintiff circulated a memorandum regarding his medical leave, and referred all work-related problems to his colleague Mrs. Myrna Negrón. Laborde and Monserrate received the memorandum, and forwarded the March 14 request to the Human Resources Department on March 19, 2002.

On April 1, 2002, Plaintiff returned from military leave. Finance Department Comptroller Ernesto Santiago ("Santiago") called Plaintiff to his office and verbally admonished him for taking absence without leave. Santiago advised Plaintiff to submit timely notification for military leave in the future. Surprised and offended at the reproach, Plaintiff told Santiago that he had notified Laborde and others. Soon thereafter, Santiago confirmed that Plaintiff had notified Laborde of his military leave, but Laborde had not informed Santiago. Plaintiff was absolved of any wrong-doing, and no disciplinary action resulted from the misunderstanding.

## B. *Master's Degree Internship*

In the year 2000, Plaintiff commenced studies in order to obtain a master's degree in nursing, which he felt would be useful in advancing his military career. Plaintiff's studies required him to participate in an internship in critical care nursing at the Veterans Affairs Medical Center in Río Piedras, Puerto Rico. Plaintiff tendered a written request to Laborde for leave without pay so that he could participate in the internship, which was only available during Plaintiff's normal working hours. Plaintiff requested leave for Wednesdays and Thursdays between January and May 2003.

Plaintiff did not receive formal approval, but he was informally permitted to participate in the internship. Plaintiff was not paid for the work days that he missed due to the internship.

In March 2003, Laborde was terminated from his position and left HSPDE. On Laborde's last day of employment, Plaintiff requested a meeting with Laborde in reference to Plaintiff's job performance evaluations, as Laborde had neglected to complete two sets of evaluations. Laborde completed Plaintiff's job evaluations immediately by giving Plaintiff negative ratings. He verbally justified his negative assessment by referring to Plaintiff's frequent absences from work. During the meeting, Laborde allegedly told Plaintiff that Plaintiff's internship-related absences were unjustified and that he would be referred to Monserrate for disciplinary action. Laborde allegedly stated that Plaintiff "had played with fire and ... [would] be burned." Laborde's termination was ef-

fective at the end of the day, and he did not return to HSPDE as an employee again.

Plaintiff was upset as a consequence of his confrontation with Laborde. Plaintiff visited Dr. Fernández Ortiz, who diagnosed Plaintiff with depression, prescribed anti-depressive and anti-anxiety medication, and referred Plaintiff to a psychiatrist, Dr. Zulma Rodríguez, for further treatment.

On March 25, 2003, Plaintiff transmitted a letter to Monserrate and Human Resources Director Vilma Rodríguez Ortiz ("Rodríguez") regarding the fact that his internship leave had never been formally approved. On April 7, 2003, in a letter transmitted by Santiago, Plaintiff received formal approval to continue taking leave without pay for his internship. Outside of Plaintiff's single confrontation with Laborde, Plaintiff was never reprimanded, admonished, or disciplined for his internship and/or military-related absences, or for any other reason.

### C. Plaintiff's Transfer to the Nursing Department

On May 23, 2003, Plaintiff was transferred from the Finance Department to the Nursing Department, where he worked under the supervision of Director of Nursing Sandy Cumpiano ("Cumpiano"). Plaintiff contends that because his supervision of OPUS–OM required him to work closely with Finance Department data, his transfer to the Nursing Department was counterproductive. Plaintiff further alleges that the transfer was unfavorable because of Cumpiano's reputation as a "very strict disciplinarian and rude person." Plaintiff claims that he was not consulted about the transfer.

On June 17, 2003, Plaintiff notified Cumpiano that he was scheduled for weekend military exercises at his military base in Puerto Rico on June 21 and 22, 2003, which conflicted with a planned work-related trip to Philadelphia, Pennsylvania. Plaintiff and Cumpiano jointly decided to request that Plaintiff's military exercises be rescheduled. At Cumpiano's direction, Plaintiff drafted a letter to Captain Maldonado requesting that his military exercises be rescheduled. Captain Maldonado authorized the change and Plaintiff traveled to Philadelphia.

On June 18, 2003, Plaintiff verbally requested military leave from Cumpiano for training at Fort McCoy, Wisconsin, in early July 2003. This training was unrelated to the local military exercises originally scheduled for June 21 and 23. Plaintiff's request for military leave for the Fort McCoy training was memorialized in a July 2, 2003 document.

On June 30 and July 1, 2003, Plaintiff participated in the rescheduled military exercises. On June 30, Plaintiff called Cumpiano's office to inform her of the training, but Cumpiano was not present. Plaintiff spoke with Cumpiano's assistant, Daniel Fontánez ("Fontánez").

On July 2, 2003, Cumpiano spoke with Plaintiff about his absences during the past two days. Cumpiano requested that Plaintiff advise her in advance of his military-related absences.

During the first week of July 2003, Plaintiff embarked for the Fort McCoy military training, but his travels were interrupted by severe weather, and he was ordered to return to Puerto Rico and complete training at a later date.

On July 11, 2003, Plaintiff remitted a letter to Cumpiano from Captain Arístides Maldonado, rescheduling the Fort McCoy military training for the period July 12 to July 25, 2003. According to Plaintiff, Cumpiano admonished him for his repeated military-related absences. The

parties agree that Cumpiano and Plaintiff spoke generally about military leave and how to better coordinate for Plaintiff's absences.

On July 16, 2003, Cumpiano transmitted a letter to Plaintiff memorializing their July 11 conversation and requesting that in the future, Plaintiff more consistently give advance notice of his military leave. Lastly, the letter indicated that Plaintiff would be training two persons on the use of OPUS–OM, in order to avoid operational disruptions during Plaintiff's future absences.

Plaintiff took umbrage at Cumpiano's letter because he felt that contrary to Cumpiano's supposition, he had given advance notice of every past military-related absence. Plaintiff also felt that by training other employees on how to use OPUS–OM, Cumpiano was rendering Plaintiff replaceable so that he could be terminated. Plaintiff never trained the two employees, though at deposition he characterized Cumpiano's request as "a good decision" because of his frequent military-related absences.

On July 28, 2003, Plaintiff transmitted a letter to Cumpiano stating that he had given her advance notice of each military-related absence. Plaintiff alleges that Cumpiano confronted him on the same day, admonishing him for his repeated absences and suggesting that he was not truthful about his military duties.

In July 2003, Plaintiff complained to Cumpiano that personnel coordinator Aida Avilés kept a careful record of Plaintiff's work attendance. Plaintiff perceived Avilés as spying on him, and considered Avilés' daily inquiries into Plaintiff's attendance to be harassment. Avilés verified the attendance of all Nursing Department employees, including Plaintiff, on a daily basis.

Plaintiff claims to have been agitated by his confrontation with Cumpiano. He sought continued treatment from Dr. Fernández Ortiz and Zulma Rodríguez, and requested sick leave on July 28, 2003.

### D. *Plaintiff's Resignation*

On January 22, 2004, Plaintiff tendered his resignation. Plaintiff did not speak directly with Human Resources Director Rodríguez, but instead spoke with Damaris Ruiz Huertas ("Ruiz"), Rodríguez' executive secretary. Plaintiff felt that his referral to a secretary, rather than to Rodríguez, was insulting, discriminatory, and in violation of HSPDE's policies. Ruiz advised Plaintiff to discuss the matter with his supervisor, but he expressed discomfort in speaking with his supervisor. Plaintiff took umbrage that no executive attempted to persuade him not to resign.

### E. *Procedural History*

On November 18, 2003, Plaintiffs filed the present complaint, seeking relief under USERRA based on the facts articulated above. *Docket Document No. 1.* Defendants moved for summary judgment on May 12, 2005, arguing that Plaintiffs failed to assert a prima facie case of harassment or constructive discharge actionable under USERRA. *Docket Document No. 51.* Plaintiffs responded in opposition to the summary judgment motion on June 16, 2005. *Docket Document No. 61.* Defendants replied to Plaintiffs' opposition on July 12, 2005. *Docket Document No. 72.*

## II.

### *Applicable Law*
### A. *Standard for Summary Judgment*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, de-

positions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 19 (1st Cir.2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact, though the burden "may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden has two components: (1) an initial burden of production that shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion that always remains on the moving party. *See id.* at 331.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." *Euromodas, Inc. v. Zanella*, 368 F.3d 11, 17 (1st Cir.2004) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)).

### B. *Prima Facie Case*

Congress enacted USERRA, like its predecessor, the Veterans' Reemployment Rights Act (VRRA), to encourage noncareer service in the military by minimizing negative repercussions in the civilian workplace potentially prompted by military service. *See* S.Rep. No. 1477 90th Cong., 2d Sess. (1968); *Boyle v. Burke*, 925 F.2d 497, 502 (1st Cir.1991) (VRRA was enacted "to protect potential and existing reservists from policies that deter employees from joining the reserves."); *see also Barreto v. ITT World Directories, Inc.*, 62 F.Supp.2d 387, 395 n. 7 (D.P.R.1999) ("USERRA's legislative history established that the extensive body of case law that had evolved under VRRA should remain in full force and effect when interpreting the provisions of USERRA"). USERRA prohibits adverse employment actions in which the employee's membership in the uniformed services is a "motivating factor" in the employer's action. 38 U.S.C. § 4311(c).

For a plaintiff to establish a prima facie case and thereby survive summary judgment, he must show that his membership or participation in the uniformed services was the substantial or motivating factor behind the employer's adverse employment action. *Barreto*, 62 F.Supp.2d at 391; *Gummo v. Vill. of Depew, New York*, 75 F.3d 98 (2d Cir.1996); *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994) (citing *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir. 1993)). The employer may escape liability by raising the affirmative defense that it would have made the same decision regardless of the employee's veteran status. *Gummo*, 75 F.3d at 106 (citing *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 401, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983)).[1] Thus, if the employer had legitimate busi-

1. Legislative history indicates that Congress intended for courts enforcing the Veteran's Employment and Reemployment Rights Act to use the burden of proof allocation formula approved by the Supreme Court in *Transp. Mgmt. Corp. See* 1994 USCCAN at 2457, S.Rep. No. 158, 103d Cong., 2d Sess. 45 (1994).

ness reasons for its decision, such as a diminished need for services or a lack of qualification, the employer may not be liable. *See Preda v. Nissho Iwai American Corp.,* 128 F.3d 789, 791–92 (2d Cir.1997) (stating that to be "qualified" to return to his prior position, the veteran must be physically capable of performing the job and willing and able to work harmoniously with co-workers and supervisors); *Trusteed Funds, Inc. v. Dacey,* 160 F.2d 413, 420–21 (1st Cir.1947). The protection of a veteran's employment is, therefore, "based upon the veteran's compliance with the reasonable and ordinarily accepted standards of personal conduct and performance of all employees." *Preda,* 128 F.3d at 792 (quoting *McCormick v. Carnett–Partsnett Sys., Inc.,* 396 F.Supp. 251, 256 (M.D.Fla.1975)).

### III.

### *Analysis*

### A. *Hostile Work Environment Claim*

Plaintiffs frame their complaint as a hostile work environment claim. *Docket Document Nos. 1, 59.* Defendants argue that hostile work environment claims are not cognizable under USERRA. *Docket Document No. 51.* In response, Plaintiffs cite two age discrimination cases, *Melendez–Arroyo v. Cutler–Hammer de Puerto Rico Co.,* 273 F.3d 30 (1st Cir.2001) and *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir. 2000).[2] *Docket Document No. 61.* Neither case involves USERRA, VRRA, or a hostile work environment claim. *See Melendez–Arroyo,* 273 F.3d at 32 (assessing Age Discrimination in Employment Act constructive discharge claim); *Suarez,* 229 F.3d 49 (same).

■ USERRA prohibits the denial of "any benefit of employment by an employer" to members of uniformed service based on their membership and/or performance of service. 38 U.S.C. § 4301. USERRA "does not specifically prohibit an employer from subjecting an employee to harassment or a hostile work environment due to the employee's military status." *Vickers v. City of Memphis,* 368 F.Supp.2d 842, 844 (W.D.Tenn.2005). The law is unsettled as to whether hostile work environment claims are cognizable under USERRA. *See, e.g., Petersen v. Dep't of Interior,* 71 M.S.P.R. 227 (1996) (finding that harassment based upon prior military service violated USERRA); *Vickers,* 368 F.Supp.2d at 844 (Noting the absence of district or appellate court precedent on the issue of "whether freedom from a hostile work environment is contemplated within the term 'benefit of employment' in the USERRA"; finding the Merit Systems Protection Board's findings in *Petersen* persuasive and adopting "its conclusion that the USERRA provides a cause of action for harassment . . . ."); *cf. Diaz–Gandia v. Dapena–Thompson,* 90 F.3d 609, 614 (1st Cir.1996) ("VRRA § 2021(b)(3) is designed to deter discriminatory employment actions like discharge and demotion . . . .") (internal citations excluded).

■ Accepting, arguendo, Plaintiffs' assertion that hostile work environment claims are cognizable under USERRA, we find no supporting evidence for such a claim in the present case. To assert a hostile work environment claim under an analogous federal statute, such as Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17 (1994 & Supp.2003), the Age Discrimina-

---

**2.** Plaintiffs refer to the latter case as *Marrero v. Goya de P.R.,* but cite to *Suarez. Marrero v. Goya de P.R.,* 304 F.3d 7, 18 (1st Cir.2002) is a hostile environment sexual harassment case that does not involve USERRA or VRRA.

tion in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1994 & Supp.2003), or the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12165 (1994 & Supp.2003), Plaintiff must "show that [he] was subjected to severe or pervasive harassment that materially altered the conditions of [his] employment." *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir.2005). In a hostile work environment inquiry, we consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 180, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (Title VII precludes "harassment that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment"). In characterizing the negative workplace environment, courts have drawn a continuum between rudeness and ostracism, on one side of the spectrum, and severe or pervasive harassment on the other side, generally finding that "rudeness or ostracism, standing alone" is insufficient to support a hostile work environment claim and that severe or pervasive harassment is actionable. *Noviello*, 398 F.3d at 92; *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 52 n. 12 (1st Cir.1999).

 As Defendants correctly assert, Plaintiffs fail to allege any act or omission that could even remotely be considered as falling along this continuum. Plaintiff "may not rest upon mere allegations; [he] must set forth specific facts demonstrating that there is a genuine issue for trial." *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (1st Cir.1988). Plaintiff's sole al-

legation of even potentially hostile conduct emanated from Laborde on Laborde's final day of work before being terminated, when Laborde allegedly gave Plaintiff negative work reviews and threatened to notify management of his internship-related absences. *Docket Document No. 59*. The only result from Laborde's threat was that Plaintiff was promptly granted formal leave to pursue his graduate degree. *Docket Document No. 72*. We do not find this single alleged harassment episode, initiated by an employee who had been terminated by his employers and was hours from his final exit, sufficient to support a hostile work environment claim. Plaintiff's allegations regarding Cumpiano, meanwhile that she participated unannounced on a conference call, requested that he give better notice of his military leave, and request that he train other employees to operate OPUS–OM to minimize disruptions during his absences fall so short of being harassment as to not warrant individual consideration. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive" is not cognizable. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

### B. *Constructive Discharge*

 Interpreted charitably, Plaintiff's USERRA claim may be based on an allegation of constructive discharge, which is cognizable under USERRA. *Diaz–Gandia*, 90 F.3d at 614. The thrust of Plaintiff's complaint is that he was unfairly accused of not giving advance notice of his military absences, that he was transferred between hospital departments (without suffering any change in responsibility, title, or benefit) and placed under the supervision of a strict disciplinarian, that his request for permission to take leave while

pursuing a graduate degree was not processed formally upon his first request (although informal permission was granted immediately), and that no one tried to persuade him not to leave when he proffered his resignation. These claims are grossly insufficient even to support a claim of constructive discharge, which requires some allegation of a tangible change in employment conditions. *Cf. Carlson v. N.H. Dep't of Safety,* 609 F.2d 1024, 1027 (1st Cir.1979) (finding that a shift reassignment requiring weekend work, night work, and longer hours constituted an employment action that might deter an employee from participating the military reserves); *Diaz–Gandia,* 90 F.3d at 614 ("As an 'outright demotion involves reductions in pay and official rank,' a constructive reduction in pay or rank would constitute an employment action sufficiently 'like a demotion' to satisfy" the *Monroe* severity standard) (quoting *Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1218 n. 8 (1st Cir. 1989); *Monroe,* 452 U.S. at 559, 101 S.Ct. 2510). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Blackie v. Maine,* 75 F.3d 716, 725 (1st Cir.1996).

Plaintiffs articulate the bulk of their claims in a so-called "Statement of Contested and Uncontested Facts." *Docket Document No. 59.* In violation of Local Rule 56(c), no effort is made to deny or confirm those facts put forward by Defendants. *See* P.R. LOCAL R. 56(c). No effort is made to support Plaintiffs' claims with case law or legal analysis to show how the claims are cognizable under USERRA. Rather than continuing to slog through each of Plaintiffs' countless allegations and develop the relevant case law to demonstrate how each individual allegation is deficient, we conclude by stating that the

allegations, whether considered individually or as a group, do not support any claim whatsoever under USERRA. Plaintiff has failed to present a prima facie case demonstrating a single adverse employment action, including hostile work environment, demotion, or discharge.

## IV.

### *Conclusion*

In accordance with the foregoing, we **GRANT** Defendant's motion for summary judgment. *Docket Document No. 51.* Plaintiffs' USERRA claims are **DISMISSED.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**