**Jorge Hernandez BARRETO,
et al., Plaintiffs,**

**v.**

**ITT WORLD DIRECTORIES, INC.
(Puerto Rico Branch),
Defendant.**

**No. CIV. 98–1308(RLA).**

United States District Court,
D. Puerto Rico.

July 30, 1999.

Angel L. Tapia–Flores, Roberto O. Maldonado–Nieves, Franklin D. Roosevelt, San Juan, PR, for Plaintiffs.

Ariadna Alvarez, McConnell Valdes, San Juan, PR, for Defendant.

### OPINION AND ORDER DISMISSING THE COMPLAINT

ACOSTA, District Judge.

Plaintiff, JORGE HERNANDEZ BARRETO ("HERNANDEZ"), his wife and their conjugal partnership instituted these proceedings alleging that HERNANDEZ was dismissed from employment by the defendant because of his military status in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4311 *et seq.* ("USERRA"), and its state-law counterpart, Act No. 62 of June 23, 1969, as amended,

P.R. Laws Ann. tit. 25, §§ 2001–2093 (19...) ("Act 62").

Additionally, plaintiffs seek relief under various state law provisions including breach of employment contract, wrongful discharge and damages under Puerto Rico's general tort statute, Art. 1802 of the P.R. Civil Code, P.R. Laws Ann. tit. 31, § 5141 (19...) ("Article 1802").

Defendant, ITT WORLD DIRECTORIES, INC., Puerto Rico Branch, currently known as VNU WORLD DIRECTORIES, INC., Puerto Rico Branch, ("VNU") has moved for the dismissal of the complaint in its entirety. The Court having reviewed the memoranda as well as all documents filed by the parties finds that summary disposition of plaintiffs' causes of action is proper for the reasons further elaborated below.

## I. THE FACTS

The following facts, essential to the controversy at hand, are not in dispute.

### A. Background Facts

HERNANDEZ applied for employment with VNU and in due course was interviewed by MR. JOSÉ LUIS BLANCO ("BLANCO"), VMU's General Manager and President, MR. EDWIN STEVENSON ("STEVENSON"), Sales Manager, and MS. LAURA CHEVRES ("CHEVRES"), Director of Human Resources and Administration.[1]

During his interview, HERNANDEZ provided defendant's representatives with a copy of his résumé which clearly indicated that he was an active member of the Puerto Rico Air National Guard.

HERNANDEZ began working for VNU on January 2, 1996, as Sales Support Coordinator, and was later assigned to the position of Premise Sales Supervisor.

HERNANDEZ acknowledged that BLANCO, defendant's General Manager and President, the person who recruited him, was aware of plaintiff's military status since they were neighbors and BLANCO would see him walking in his military uniform.

### B. Performance

In his deposition HERNANDEZ admitted that he had been admonished on at least four (4) separate occasions while working for VNU as follows:

1. On **November 21, 1996** plaintiff was warned that he was below objectives and that some of the salespersons he supervised were 17–30% under their respective objectives;

2. On **January 16, 1997** plaintiff was given a memorandum pointing to the low statistics reflected by his sales group and instructing him to correct the situation;

3. On another occasion some employees supervised by plaintiff complained about his supervisory skills; and,

4. Plaintiff was once called to a meeting where BLANCO became upset because HERNANDEZ sided with the sales staff and not with management.

HERNANDEZ also admits that he was admonished at least seven (7) times, as described below, due to his failure to follow instructions:

1. Plaintiff failed to submit ALBERTO DIAZ' performance evaluation by the set deadline, despite various requests from his supervisors to do so;

2. On March 17, 1997 plaintiff excused RUBEN ALICEA from attending a sales meeting despite having been instructed that no employee could be excused from attending said meeting;

3. Plaintiff remained in the office lounge drinking coffee instead of attending a meeting that was being held up waiting for him, despite being summoned twice at the lounge by his supervisor;

---

**1.** BLANCO, STEVENSON and CHEVRES are the individuals plaintiff claims took part in the alleged acts of discrimination and/or in the events that triggered his discharge.

4. On **June 28, 1996** plaintiff was given a warning for allowing a sales persons under his supervision to continue working on the "Isla" campaign even though all supervisors were directly instructed not to allow salespersons to continue working on that campaign;

5. On **December 2, 1996** plaintiff was again admonished for allowing three (3) employees who were below objectives— A. RESTO, R. ALICEA AND L. PÉREZ—to take time off even though upper management had specifically instructed supervisors not to grant time off to employees who were below objectives;

6. Despite having been requested on **December 12, 1996** to contact DR. MARIO POLO, a client, plaintiff did not do so until **January 12, 1997** and only after several follow-up calls were made to plaintiff; and

7. On **March 10, 1997** GUSTAVO SANTIAGO ("SANTIAGO") discovered that HERNANDEZ had not yet assigned the account of Michaels Arts & Crafts to a salesperson, notwithstanding that SANTIAGO had asked him to do so approximately two weeks before.

HERNANDEZ also admitted during his deposition that he failed to prepare certain daily reports on a timely basis, which caused problems to other employees who relied on the information contained therein.

On **March 31, 1997** HERNANDEZ and six (6) other employees of the sales department were discharged.

HERNANDEZ acknowledged that the reasons given for their terminations were "that they were supposedly no good."

HERNANDEZ never mentioned discrimination based on his military status either at the time of his discharge or in any of the letters written by him regarding the termination of employment.

## II. SUMMARY JUDGMENT

The purpose of the summary judgment mechanism is to avoid unnecessary trials by ascertaining whether material facts are in dispute. To prevail at this stage of the proceedings the movant must establish the absence of relevant facts in controversy and its entitlement to a judgment based on the applicable law. *Feliciano v. State of R.I.*, 160 F.3d 780 (1st Cir.1998), *Soto–Ocasio v. Fed. Express Corp.*, 150 F.3d 14 (1st Cir.1998).

The non-movant, on the other hand, cannot limit his role to pointing to facts in controversy but must also present adequate evidence substantiating each fundamental component of his claim. That is, plaintiff must have available sufficient evidence for a reasonable fact-finder to conclude that he has met her burden of persuasion regarding all the essential elements of his cause of action. *Hodgens v. Gen. Dynamics. Corp.*, 144 F.3d 151, 158 (1st Cir.1998) and *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

Summary judgment may be appropriate even in cases involving discriminatory animus when the evidence of motive adduced by the party opposing the motion hinges on unsupported conjectures. *Hodgens*, 144 F.3d at 167; *Fennell*, 83 F.3d at 535; *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir.1994); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

## III. USERRA

USERRA prohibits an employer from denying employment benefits to a member of the armed services because of his military obligation. 38 U.S.C. § 4311(a). A violation of USERRA occurs if the employee's military status is a motivating factor in the employer's actions, unless the employer can prove that the action would have been taken in absence of the employee's military appointment. 38 U.S.C. § 4311(c)(1). *See Gummo v. Village of Depew, N.Y.* 75 F.3d 98, 106–7 (2nd Cir.),

*cert. denied,* 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996); *Kelley v. Maine Eye Care Assoc.,* 37 F.Supp.2d 47 (D.Me. 1999); *Robinson v. Morris Moore Chevrolet–Buick, Inc.,* 974 F.Supp. 571, 575 (E.D.Tex.1997) and Lt. Col. Conrad, *Interpreting USERRA "Mixed Motive" Discrimination Cases,* 1997–Dec. ARMLAW 30.

The following incidents constitute the only alleged acts of military discrimination asserted by HERNANDEZ in this case.

### (i) Activity at Military Base

During **April of 1996**, VNU launched a new sales campaign with an activity at the Muñiz Air Base. Plaintiff, who was responsible for coordinating this event, contends that his supervisor's derogatory remarks regarding the activity constitute military discrimination.

### (ii) Military Leave

On **March 5, 1997** HERNANDEZ verbally requested STEVENSON for four (4) days off, i.e., March 18 to March 23, 1997, to be charged to vacation time and floating holidays.

STEVENSON asked plaintiff whether he could postpone this request because it conflicted with the closing of the "Metro" sales campaign and because his sales were below objectives.[2]

Plaintiff then advised that the activity was a military inspection at which point STEVENSON explained that inasmuch as what he was requesting was military leave plaintiff should submit a formal request, as required by VNU's military leave policy.

On **March 6, 1997** plaintiff requested the time off in writing and was granted paid military leave of absence.

Plaintiff returned from his military training on Monday, **March 24, 1997,** and was reinstated to his position.

**2.** HERNANDEZ admitted in his deposition that at that point his group was meeting only

### (iii) Comment by Supervisor

HERNANDEZ claims that STEVENSON told him that had STEVENSON known that plaintiff was in the military he would not have hired him.

### A. Prima Facie Case of Discrimination

■ Pursuant to 38 U.S.C. § 4311(c) HERNANDEZ must initially show, by a preponderance of the evidence, that his military status was a motivating factor in VNU's decision to terminate his employment. *Gummo,* 75 F.3d at 105. Therefore, plaintiff must prove that VNU relied on, took into account, considered or conditioned the termination of his employment to the fact that he was a member of the P.R. National Guard.

■ The uncontested facts in this case, mainly consisting of plaintiff's own testimony, do not show that his military status was considered by VNU when discharging HERNANDEZ from employment.

The first incident cited by plaintiff as indicative of bias is STEVENSON's expression of dissatisfaction with the way plaintiff organized an activity at the Muñiz Air Base. Specifically, plaintiff contends that STEVENSON criticized the way in which the chairs were placed—purportedly not organized in the customary way; disliked the fact that no waiters were available to serve the food to the employees, and remarked that the activity was "shit".

Plaintiff avers that this constitutes military discrimination because the event took place at a military base. However, plaintiff admitted that no references to the military were made regarding this incident. Rather, the comments were limited to logistical details of the activity. The fact that STEVENSON may have complained about the organization of the event has no military connotation and none can be inferred simply because it transpired in a military enclave. The function was the

90% of its objective.

kickoff of VNU's sales campaign, not a protected military activity.

Inasmuch as HERNANDEZ did not attempt to show that the event was in any way related to the military, or a connection between the activity and his termination from employment,[3] this particular evidence is insufficient to create an inference of discrimination.

STEVENSON'S inquiry as to whether plaintiff could postpone taking four (4) days off, equally bears no discriminatory animus. The uncontested evidence shows that when HERNANDEZ first requested leave he intended to have it charged to his accrued vacation and days off. It was not until STEVENSON asked if it could be postponed—due to the fact that VNU was in the middle of a sales campaign and HERNANDEZ was under budget—that plaintiff first mentioned the military inspection. It is also uncontroverted that HERNANDEZ was instructed to put the request in writing in order to process his days off as a military leave, not as a vacation or other type of employee license. Military leave was then granted.

Lastly, in his attempt to meet his burden of proving discrimination HERNANDEZ claims that STEVENSON told him that had STEVENSON known that plaintiff was in the military he would have not hired him. This particular allegation is discredited by plaintiff's own testimony and by the evidence in the record which inconclusively establishes that the particular VNU employees involved in the hiring process had ample notice of plaintiff's military status prior to his employment. HERNANDEZ admitted that during his job interview with the three (3) VNU representatives he submitted copy of his résumé which specifically disclosed his military status. Further, STEVENSON, one of the persons who evaluated plaintiff's résumé and interviewed him for employ-

ment was also in the military. Additionally, this after-the-fact claim[4] clashes with HERNANDEZ' own testimony that BLANCO, his neighbor, had seen him in military uniform before employing him at VNU.

Based on the foregoing, we find that plaintiff has not met his burden in order to make a prima facie case under USERRA. There is no evidence indicative that plaintiff's military status was a motivating factor for his dismissal.

## B. VNU's Non-discriminatory Reasons

█ Assuming *arguendo* that HERNANDEZ did present a prima facie case of military discrimination, VNU has shown that it would have discharged HERNANDEZ regardless of his military status. 38 U.S.C. § 4311(a) and (c)(1); *Gummo*, 75 F.3d at 106.

VNU has proffered a long list of grounds in support of its decision to terminate HERNANDEZ, all unrelated to the fact that he was in the military. It is uncontested that despite having been forewarned by his supervisor on multiple occasions plaintiff failed to improve his performance at work. The record shows that defendant had ample non-discriminatory reasons to discharge plaintiff such as: (1) HERNANDEZ' poor performance, (2) lack of managerial skills, (3) ineffective supervision, (4) pattern of disregarding instructions, and (5) failure to meet deadlines.

During the one year and three months that plaintiff was employed with VNU, HERNANDEZ was warned approximately 11 times either verbally, via memoranda or by e-mails. These admonitions were prompted by irregularities in his job, his sales group was under objectives, and because some employees supervised by plaintiff complained to management about his supervisory skills. Plaintiff does not contest these incidents but rather attempted to justify them.

---

**3.** The activity took place in **April of 1996,** four (4) months after he began employment at VNU and almost a year prior to his discharge.

**4.** Plaintiff never mentioned this alleged remark to anyone at VNU's management.

VNU's proffered reason for terminating HERNANDEZ, as conceded by plaintiff in his deposition, was that plaintiff did not meet company objectives and "was no good." The record conclusively supports VNU's assessment that HERNANDEZ was "no good" for the job.

Further, plaintiff's discharge was not an isolated event. It was part of VNU's efforts to make its operation more effective. HERNANDEZ admitted that on the same date that he was terminated, six (6) other employees who did not belong to the military, were also discharged for similar reasons, i.e., poor performance. VNU needed to restructure its sales operations in order to be more effective. In order to accomplish this defendant required more disciplined, responsible and committed employees to do the job and neither HERNANDEZ, nor the other discharged employees, met these standards.

Accordingly, there is no evidence to suggest that VNU's reasons for terminating HERNANDEZ were a pretext to discriminate against him. Rather, it is evident that plaintiff's dismissal was inevitable and would have taken place regardless of his military obligations.

Based on the foregoing plaintiff's US-ERRA claim must be **DISMISSED**.

## IV. STATE LAW CLAIMS

■ Plaintiffs have asserted local claims under the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367(a) which we will also dispose of at this time. A federal court may retain supplemental jurisdiction of the local law claims and dismiss all those allegations contained in the complaint under which plaintiffs are clearly not entitled to relief. *See Cronin v. Town of Amesbury*, 81 F.3d 257 (1st Cir.1996) (the district court appropriately exercised its discretion in retaining jurisdiction over, and disposing of, the entire compendium of state law claims in the case).

VNU has moved the Court to dismiss plaintiffs' local claims alleging that: (1) HERNANDEZ cannot claim damages under the general torts provisions of Article 1802 since that statute is displaced by the specific provisions of Act 62; (2) HERNANDEZ' claim under Act 62 is time barred; (3) the allegations of breach of contract and/or damages are precluded by the provisions of Puerto Rico Act 80 of May 30, 1976, as amended, P.R. Laws Ann. tit. 29, § 185(a)et seq. ("Act 80"); (4) MYRNA DENIZARD, plaintiff's spouse, and their conjugal partnership are not entitled to damages under Article 1802; and (5) plaintiff's claim for punitive damages should also be dismissed because it is contrary to law, since USERRA does not provide for such relief.

### A. Damages under Article 1802

■ In Puerto Rico the provisions of the Civil Code are supplementary to special legislation. *Rosario v. Atlantic Southern Ins. Co.*, 95 P.R.R. 742, 747 (1968); *Berrocales v. Tribunal Superior*, 102 D.P.R. 224, 226 (1974); *Rivera de Vincenti v. Colón*, 103 D.P.R. 560 (1975).

■ The purpose of Act 62 (the Military Code) is to protect the members of the military forces of Puerto Rico from being dismissed or discriminated against because of their military status. Act 62, as a special law, prevails over the general provisions of the Civil Code such as the general tort statute appearing in Article 1802.

Inasmuch as the claims asserted in the complaint arise from the alleged discrimination against HERNANDEZ by reason of his military status, it is axiomatic that it is Act 62 and not Article 1802 that applies to the facts in this action. Therefore, HERNANDEZ cannot claim remedies under Article 1802 or under any other general statute for actions or facts intended to be redressed by Act 62.

■ Plaintiff's spouse, MYRNA DENIZARD and their conjugal partnership are likewise not entitled to bring a separate cause of action under Article 1802 since

there is no specific legal provision to support this allegation. Plaintiffs attempt to base this claim on the decisions issued by the Puerto Rico Supreme Court in *Santini Rivera v. Serv Air, Inc.*, 94 J.T.S. 121, and *Maldonado Rodríguez v. Banco Central Corporation*, 95 J.T.S. 48, where certain plaintiffs related to a victim of discrimination were allowed to assert a claim under Article 1802 to redress the damages they purportedly suffered as a result of the alleged discriminatory discharge of their relative. We find, however, that *Santini* and *Banco Central* are inapposite to the facts before us. Those cases arose from conduct protected by Act 100, which specifically provides for an award of damages to the discriminated employee. In this case discrimination is asserted under Act 62 and USERRA which, contrary to Act 100, do not provide for a damages award. Therefore, it would be ludicrous for plaintiff's spouse to be entitled to greater benefits than HERNANDEZ himself would be entitled to.

### B. Act 62

HERNANDEZ cannot recover damages under Act 62 since sec. 233(c) of Act 62 specifically limits the employer's liability to reinstatement and back pay. This is confirmed by clear legislative intent.

Further, any equitable relief claim asserted under Act 62 is time-barred. Section 233 of Act 62 specifically provides that the employee must "demand from his employer fulfillment of the obligation imposed by this subsection" within six (6) months from the date of the dismissal or discrimination. P.R. Laws Ann. tit. 25, § 2084 (1969). Since VNU terminated HERNANDEZ on March 31, 1997, he had until September 30, 1997, to assert his claim against VNU under Act 62. This could be accomplished by either filing (1) a complaint in court or (2) a charge before the Puerto Rico Veterans' Advocate of Labor and Human Resources, the local agency authorized to prosecute discrimination claims under Act 62.[5]

It appearing that it was not until March 26, 1998, one year after his dismissal, that HERNANDEZ instituted the instant proceedings the claim asserted under Act 62 is time-barred and must therefore, be **DISMISSED.**

### C. Breach of Contract

Plaintiffs' claim for breach of employment contract based on HERNANDEZ' discharge is equally flawed. In Puerto Rico, which is not an employment-at-will jurisdiction, the only remedy available to an employee hired for an indefinite period of time for termination without just cause and absent discriminatory motive, is the relief provided for in Act No. 80 which in pertinent part reads:

5. The Puerto Rico Legislature created the office of the Puerto Rico Veterans' Advocate of Labor and Human Resources to handle *the needs and claims of Puerto Rican Veterans in the areas of employment and labor legislation.* See Act No. 57 of June 27, 1987, P.R. Laws Ann. tit. 29, § 823(b). This is the only agency expressly authorized to handle a claim under Act 62. The only action taken by Hernández was filing a discrimination charge in May 1997 with the U.S. Department of Labor, Office of the Assistant Secretary for Veteran's Employment and Training ("U.S. Veterans Office"). Nevertheless, the filing of this charge did not toll the six-month limitations period established by Act 62. The U.S. Veterans Office is only responsible for seeking compliance with USERRA and has no jurisdiction to prosecute a discrimination claim under Act 62. Furthermore, there is no law or regulation that establishes that an Act 62 claim can be interrupted by making a claim before a federal agency. When litigating general employment discrimination cases under Puerto Rico's general discrimination statute, Act No. 100 of June 30, 1959 ("Act 100"), the filing of a charge with the federal agency (the EEOC) tolls the statute of limitations. This happens only because a work-sharing agreement exists between the state and federal agencies that expressly so states. Absent a similar agreement we conclude that the filing of a charge with the federal agency may not interrupt the limitations period under state-law.

Every employee in commerce, industry or any other business or place of employment (designated hereinafter as the establishment) in which he works for compensation of any kind, **under contract without a fixed time,** who is discharged from his employment without good cause shall be entitled to receive from his employer in addition to the salary he may have earned:

> (a) The salary corresponding to one month as indemnity if the discharge occurs during the first five (5) years of service; the salary corresponding to two (2) months as indemnity if the discharge occurs after the first five (5) years and until fifteen (15) years of service; and the salary corresponding to three (3) months as indemnity if the discharge occurs after fifteen (15) years of service;
>
> (b) An additional progressive indemnity equivalent to one week for each year of service . . . .

(Emphasis ours).

The Puerto Rico Supreme Court has repeatedly held that the remedy afforded to an employee under Act 80 excludes any claims for damages against the employer. *Biver v. Cooperativa Federal de Empleados Telefónicos*, 98 J.T.S. 33; *Santiago v. Kodak Caribbean, Ltd.*, 92 J.T.S. 11; *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35 (1986); *Rivera v. Security National Insurance Co.*, 106 D.P.R. 517 (1977).

■ An employer may not be sued for dismissing an employee under any other statute unless it has engaged in some type of tortious conduct separate or independent from the termination of employment itself. *Security National Insurance Co.*, 106 D.P.R. at 527; *Vargas v. Royal Bank of Canada*, 604 F.Supp. 1036, 1040 (D.P.R. 1985) ("Act No. 80 has been construed as providing an exclusive legal remedy. The employer's liability for an unjust dismissal is limited to the payment of the monies owed under the formula established by Section 185(a) . . . .")

Since HERNANDEZ was hired for an indefinite period of time and apart from his termination plaintiff has not adduced any independent and separate conduct as grounds for relief, Act 80 must prevail. Accordingly, HERNANDEZ is barred from asserting claims for breach of contract and damages under Art 1802 in connection with his dismissal and these claims are hereby **DISMISSED** in accordance with the exclusive remedy principles embodied in Act 80.[6] *Royal Bank of Canada*, 604 F.Supp. at 1041.

### D. Mental Anguish and Suffering

Congress clearly set forth the remedies to which an employee is entitled to under USERRA. These are: reinstatement, any loss of wages or benefits, and if the employer's actions were willful, the court may require the employer to compensate the employee an amount equal to the amount of lost wages or benefits as liquidated damages. 38 U.S.C. § 4323(c)(1)(A)(iii); *Novak v. Macintosh*, 155 L.R.R.M. 2990 (1996) (damages under the Veterans Reemployment Rights Act[7] are calculated as back wages and other benefits which the veteran would have received had she or he been employed, less actual earnings received from other employers during the same period). *See also Chaltry v. Ollie's Idea, Inc.*, 546 F.Supp. 44, 51 (W.D.Mich. 1982).

■ There is no doubt that the remedies provided by USERRA are essentially equitable in nature. The statute does not provide relief for either mental anguish or suffering. It allows for an award of liquidated damages in an amount equal to the

---

6. Plaintiff has not asserted a claim under Act 80 for which reason there is no need for the Court to further address that statute.

7. The Veterans Reemployment Rights Act was amended by USERRA. USERRA's legislative history established that the extensive body of case law that had evolved under VRRA should remain in full force and effect when interpreting the provisions of USERRA. H.R.Rep. No. 103–65, at 19.

**396**

lost wages and benefits only in the event that the court finds the employer's actions willful which is not the case here. HERNANDEZ could not establish a violation under USERRA, much less a willful violation. Therefore, plaintiffs' claim for punitive damages in the amount of $2,000,000 is unwarranted.

## V. CONCLUSION

Based on the foregoing, defendant's Motion Requesting Partial Dismissal, filed on February 16, 1999 (docket No. 23)[8] and Defendant's Motion Requesting Partial Summary Judgment, filed on March 24, 1999 (docket No. 39)[9] are hereby **GRANTED.**

Accordingly, the complaint filed in this action is hereby **DISMISSED WITH PREJUDICE.**

Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

8. See Opposition to Motion to Dismiss (docket No. 52) and defendant's Reply... filed on May 10, 1999 (docket No. 49).

9. *See* plaintiffs' Motion in Opposition... filed on March 26, 1999 (*docket No.* 41) and defendant's Reply tendered on April 20, 1999.