**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [doc. # 10] is **DENIED.**

**Ron VANDER WAL and Michael Vender–Dahl, Plaintiffs,**

v.

**SYKES ENTERPRISES, INCORPORATED, Cassie Thompson and John and Mary Does 01 to 10, Defendants.**

No. A1–04–049.

United States District Court,
D. North Dakota,
Southwestern Division.

July 21, 2005.

essence from the CBA. According to Defendant, these alleged errors constitute, at most, a misinterpretation of the CBA and a factual finding with which Plaintiff disagrees, neither of which merit vacating the award. On a Motion to Dismiss, the Court merely determines whether Plaintiff has stated a claim for relief. Therefore, the Court does not reach the merits of whether the arbitrator did in fact ignore the plain language of the CBA. Further, the Court does not determine whether such errors resulted in an award that fails to draw its essence from the CBA or whether such errors were merely the result of a permissible misinterpretation of the CBA or "improvident" factual findings.

John J. Gosbee, Mandan, ND, for plaintiff.

John W. Morrison, Jr., Shane A. Hanson, Fleck, Mather & Strutz, Ltd., Bismarck, ND, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

HOVLAND, Chief Judge.

Before the Court is Defendant Sykes Enterprises, Inc., and Defendant Cassie Thompson's Motion for Summary Judgment filed on March 31, 2005. For the reasons set forth below, the motions are granted.

### I. BACKGROUND

The plaintiff, Ron Vander Wal left his employment at Sykes Enterprises, Inc. ("Sykes") on January 23, 2003, when his South Dakota National Guard unit was deployed overseas. Vander Wal returned to the United States approximately 14-months later. On March 31, 2004, Vander Wal applied for reemployment with Sykes and stated on his application that he would be available to return to work on May 4, 2004. On April 23, 2004, Vander Wal contacted Sykes through his attorney to demand his immediate reemployment. On April 28, 2004, Vander Wal filed a lawsuit under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311 et. seq. On that same day, Sykes wrote to Vander Wal to advise him that he was to report to work on May 4, 2004.

On August 20, 2004, Vander Wal and Michael Vender–Dahl filed a Motion to Amend Complaint to add Vender–Dahl as a named plaintiff. In addition, Vender–Dahl filed a Motion to Intervene pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. Like Vander Wal, Vender–Dahl left his employment with Sykes after his National Guard unit was deployed overseas. According to Vender–Dahl, he experienced difficulty getting his job back upon his return to the United States. Apparently, Vender–Dahl visited Sykes on or about April 23, 2004, to inquire about reemployment. Although Vender–Dahl indicated to Sykes that he was available to return to work on or before April 26, 2004, he was told to report to work on May 4, 2004. On September 10, 2004, the Motion to Intervene and the Motion to Amend Complaint were granted. The Amended Complaint was filed on September 23, 2004. This case is scheduled for a jury trial to commence on November 8, 2005, in Bismarck, North Dakota.

### II. FACTS–RON VANDER WAL

Sykes provides customer care management solutions for companies involved in the technical, financial, and communications industries. As a part of its operations, Sykes maintains a facility in Bismarck, North Dakota. The defendant, Cassie Thompson, is employed as Sykes' Human Resources Administrator and she has held the position since August 2002.

It is undisputed that in July 2001, Ronald Vander Wal was hired as a telephone Customer Support Technician ("CST") in Bismarck. Vander Wal was responsible for handling telephone calls placed by customers regarding problems they were having with equipment of one of Sykes' clients. Before being allowed to handle

customer telephone calls on a new account, all CSTs are required to undergo a client-specific, classroom-training program. Throughout his employment, Vander Wal was a member of the South Dakota National Guard. On January 24, 2003, Vander Wal went on active duty.

In May 2003, one of Sykes' clients [1] notified Sykes that it was terminating its contract in order to create its own in-house client services department. As a result, Sykes was forced to layoff the employees who handled customer calls for that particular client because Sykes did not have any additional work for them. Pursuant to the Worker Adjustment Retraining and Notification Act ("WARN"), Sykes notified those employees and informed them that they were going to be laid off in July 2003. Vander Wal was included in the reduction-in-force and received the WARN notices.

In March 2004, Vander Wal returned to the United States and was given his official release from military service. He was formally released from duty on April 22, 2004. See Deposition of Vander Wal, p. 15. On March 31, 2004, Vander Wal returned to Bismarck and began to look for a place to live. He went to Sykes and reapplied for work. Deposition of Vander Wal, p. 20. When he returned to Sykes, Vander Wal asked the receptionist if he could speak with Cassie Thompson, the Human Resource Administrator. Thompson was not available and the receptionist asked Vander Wal to fill out an application. Deposition of Vander Wal, pp. 20–21. On his application, Vander Wal stated that he would not be available to work until May 4, 2004 because he needed time to get his personal affairs in order. Deposition of Vander Wal, p. 29.

Vander Wal returned to Sykes on April 6, 2004. When he arrived, Cassie Thompson was working at the front desk. Vander Wal identified himself and asked for his W–2. Deposition of Vander Wal, p. 39. Vander Wal informed Thompson that he had been gone quite a while. Id. He asked Thompson if there were any jobs available. After telling Vander Wal that there were no jobs, Thompson informed him that "he was not the only one" looking for a position. Deposition of Vander Wal, pp. 41–42. Vander Wal apparently assumed that Thompson meant he (Vander Wal) was not the only veteran looking for a job, but he did not ask any follow-up questions to clarify that. Thompson never gave Vander Wal any indication that she knew he was a veteran. Id. Vander Wal apparently assumed that Thompson knew of his veteran status. Id. However, the two admittedly never discussed Vander Wal's status as a returning veteran.

In the spring of 2004, Sykes ran advertisements on local radio stations and in the newspaper announcing that it was accepting applications. These ads were placed because Sykes expected to increase its business activity at its Bismarck facility in late May or June 2004. Vander Wal was unaware of these advertisements when he spoke with Thompson. Deposition of Vander Wal, p. 85. He learned about the ads from his attorney.

Sykes also circulated an internal memorandum notifying employees that it was looking to fill two positions in a new account by selecting two internal transfers. On April 21, 2004, Sykes stopped accepting applications for the internal transfers and selected the candidates based upon the employees who were available to accept the openings. Based upon the information Vander Wal had provided in his application, he was not available to start working on the new account at that time and was

---

1. In order to maintain the confidentiality of Sykes' clients, the parties have agreed not to reference account names in their pleadings or any other documents.

not available until May 4, 2004. In April 2004, Sykes received 45 applications. It is undisputed that only Ron Vander Wal and Michael Vender–Dahl received job offers from Sykes and were hired to fill the two positions.

The evidence reveals that following his conversation with Thompson, Vander Wal felt he was getting the "runaround" when he was told that there were no available positions at Sykes. Deposition of Vander Wal, p. 67. This belief was based upon his assumption that Thompson knew who he was when they spoke on April 6, 2004. *Id.* Once Vander Wal learned that Thompson may not have known who he was, Vander Wal said he was not sure if he was getting the runaround or not. *Id.* It is undisputed that at no point during any conversation did Vander Wal notify Thompson that he was available to work prior to May 4, 2004. Deposition of Vander Wal, p. 48.

Vander Wal did not communicate with Sykes for more than three weeks. Deposition of Vander Wal, p. 50. On April 23, 2004, Vander Wal's counsel faxed a letter to Ken Cass, Sykes' Director, Employment Compliance, and demanded that Sykes immediately rehire Vander Wal. The letter gave Sykes a deadline of April 27, 2004, to return Vander Wal to work. The letter was apparently not received by Sykes until the afternoon of April 27, 2004, because of a problem with Sykes' fax machine. Even though Vander Wal's letter demanded immediate reemployment, it failed to address Vander Wal's previous statements that he was not available for work prior to May 4, 2004. As soon as Cass reviewed the letter, he e-mailed Vander Wal's counsel and requested a 24–hour extension to investigate the matter. The request was denied. Cass then contacted Rene Lafferty, Sykes' Director, Human Resources—U.S. Operations, to discuss the letter. Lafferty notified Cassie Thompson of the letter. Subsequently, the two directors reviewed Vander Wal's application form.

Within 48 hours from the time that Ken Cass contacted Rene Lafferty about Vander Wal's letter, Cassie Thompson was instructed to offer Vander Wal a job. Thompson contacted Vander Wal and instructed him to return to work on May 4, 2004, the first day Vander Wal had indicated he was available to return to work. After Vander Wal accepted the job offer, Sykes began to make arrangements for his return. Sykes needed to identify an account that Vander Wal was qualified to work on before it could allow him to return. Sykes also needed to organize an account-specific training program to teach Vander Wal about his specific job duties because there were no scheduled training classes at the time he reapplied.

Vander Wal arrived for work on May 4, 2004, and began training for his new account. Deposition of Vander Wal, pp. 55–56. Vander Wal's pay was increased to reflect the raise he would have received had he not been called to active duty. Vander Wal stated he believed the pay increase was what he was entitled to receive. Deposition of Vander Wal, pp. 63–64. Vander Wal has also testified that his new job assignment was comparable to the work he did prior to being called to active duty. Pursuant to company policy, employees on leave, including military leave, are not generally entitled to receive holiday pay during their absences. This policy applies to employees on extended leave including those taking leave under the company's short-term and long-term disability plans, the Family and Medical Leave policy, and military leave. As a result, Vander Wal was not given holiday pay for Sykes' paid holidays when he was on active duty.

In this case, Sykes has acknowledged that there was one exception to the policy

of not providing holiday pay to employees on extended leave. Susan Nagel, another CST at the Bismarck facility, received holiday pay from December 2002 through July 2003. Nagel was on leave because she had become legally blind. Sykes made a conscious decision to waive its policy of not providing holiday pay to employees on leave in Nagel's case because Sykes was trying to identify reasonable accommodations that would allow her to return to work. As a courtesy to Nagel, Sykes waived its policy while trying to arrange for her return. Other than Nagel, the record reveals that Sykes has not intentionally provided holiday pay to any other employees at the Bismarck facility when they were on leave. There were 18 other employees on leave from January 1, 2003 until December 31, 2004, who did not receive holiday pay at the Bismarck facility.

Vander Wal filed this lawsuit alleging that the defendants violated his rights under the Uniformed Services Employment and Reemployment Rights Act ("USER-RA"). 38 U.S.C. § 4301. Vander Wal has also alleged that defendants Sykes, Thompson, and unnamed Does [2] conspired to deny him his reemployment rights. On January 19, 2005, Vander Wal voluntarily resigned from his position at Sykes and returned to college.

## II.   FACTS—MICHAEL VENDER-DAHL

In October 2002, the plaintiff, Michael Vender–Dahl, was hired as a telephone Customer Support Technician (CST) Bismarck. Vender–Dahl was also responsible for handling telephone calls placed by an account's customers regarding problems they were having with equipment.

Throughout his employment, Vender–Dahl was a member of the North Dakota National Guard. In January 2003, Ven-der–Dahl notified Sykes that he was being called to active military duty. *Id.* Once Vender–Dahl began his military leave, Sykes did not have any communications with him for more than one year.

In May 2003, Sykes was informed by one of its clients that it was terminating the client contract in order to create its own in-house client services department. Sykes was forced to layoff the employees who worked on the account because Sykes did not have any additional work for them. Pursuant to the Worker Adjustment Retraining and Notification Act ("WARN"), Sykes notified the employees who handled customer calls for that particular client and informed them that they were going to be laid off in July 2003. Vender–Dahl was included in the reduction-in-force and received the WARN notices.

In March 2004, Vender–Dahl returned to the United States and was given his official release from active duty. Deposition of Vender–Dahl, p. 26. He was formally released from active duty on April 24, 2004. In the spring of 2004, Sykes ran advertisements announcing that it was accepting applications for CST positions. Deposition of Thompson, pp. 203–204. Sykes also circulated an internal memorandum notifying employees that it was looking to fill two positions on a new account with internal transfers. On April 21, 2004, Sykes stopped accepting applications for the internal transfers and selected the candidates based upon the employees who applied for the positions. As previously noted, Sykes did not hire any new employees. Only Vender–Dahl and Ron Vander Wal received job offers in April 2004.

On or about April 23, 2004, the last day of Vender–Dahl's active duty, he returned to Sykes to inquire about his employment

---

**2.** The plaintiff has failed to identify any of the unnamed Does listed in his amended complaint. The date for adding new parties expired on December 31, 2004.

status. He was notified that he had been laid off as part of the July 2003 reduction-in-force. Deposition of Vender–Dahl, pp. 33–34. Nonetheless, he was instructed to reapply. While completing his application, Vender–Dahl asked to speak with a human resources representative, but was informed that no one was available. However, Vender–Dahl was notified that someone from the Human Resources Department would contact him. Deposition of Vender–Dahl, p. 43–44.

On April 27, 2004, Rene Lafferty, Sykes' Director, Human Resources—U.S. Operations, notified Cassie Thompson about correspondence Sykes had received regarding the reemployment of Ron Vander Wal, the other named plaintiff. Thompson and Lafferty also reviewed Vender–Dahl's application at that time and determined that he was eligible for reemployment. Four business days after he applied, Thompson contacted Vender–Dahl by telephone and offered him a position. Vender–Dahl was instructed to appear for work on May 4, 2004, in order to begin his mandatory orientation and job training for his new account. Vender–Dahl accepted the job offer and Sykes began to make arrangements for his return. Sykes again needed to identify an account that Vender–Dahl was qualified to work on before it could allow him to return. Sykes needed to organize an account specific training program to teach Vender–Dahl about his specific job duties because there were no scheduled training classes at the time he reapplied.

On May 4, 2004, Vender–Dahl resumed his career with Sykes and shortly thereafter began orientation and classroom-training program for his new account. *See* Deposition of Vender–Dahl, p. 53. Vender–Dahl's new position included the same job duties and responsibilities as he had performed in the CST position he occupied prior to his deployment. Vender–Dahl's

hourly rate was increased to reflect the raise he would have received had he not been on military leave. Deposition of Vender–Dahl, p. 56. His vacation benefits were restored and his personnel file was updated to reflect his seniority with the company. Deposition of Vender–Dahl, p. 55–56. Vender–Dahl declined insurance benefits because he was able to obtain coverage through his wife's company. *Id.* Based upon the adjustments to his wages and benefits, Vender–Dahl admitted that when he was rehired at Sykes he was provided with everything that he was entitled to. *Id.* Vender–Dahl is still employed at Sykes.

## IV. *LEGAL DISCUSSION*

■ It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Graning v. Sherburne County*, 172 F.3d 611, 614 (8th Cir.1999). A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations

in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed.R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## A. *THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT (USERRA)*

The purpose of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4311 et. seq., (USERRA), is as follows:

§ 4301. **Purposes; sense of Congress**

(a) The purposes of this chapter are—

(1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;

(2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and

(3) to prohibit discrimination against persons because of their service in the uniformed services.

(b) It is the sense of Congress that the Federal Government should be a model employer in carrying out the provisions of this chapter.

■ USERRA was enacted by Congress in 1994 to protect veterans' employment and re-employment rights. "Any person whose absence from a position of employment is necessitated by reason of service in the uniformed services is entitled to the reemployment rights and benefits of USERRA." *Rogers v. City of San Antonio,* 392, F.3d 758, 762 (5th Cir.2004). USERRA prohibits an employer from denying employment benefits to a member of the armed services because of his military obligation. 38 U.S.C. § 4311(a). A violation of USERRA occurs if the employee's military status is a motivating factor in the employer's actions, unless the employer can prove that the action would have been taken in absence of the employee's military obligation. 38 U.S.C. § 4311(c)(1). *See Gummo v. Village of Depew,* 75 F.3d 98 (2nd Cir.1996).

■ It is clear under USERRA that an employer is not required to reemploy a person if the employer's circumstances have changed so as to make reemployment impossible or unreasonable, or if reemployment would impose an undue hardship on the employer. *See* 38 U.S.C. § 4312(d)(1)(A) and (B). The employer has the burden of proving the impossibility or unreasonableness, or undue hardship under the circumstances.

In this case, the plaintiffs essentially contend that Sykes failed to provide for their "prompt reemployment" upon completion of their military service. USERRA prohibits an employer from denying reemployment to a veteran, or any other benefit of employment, on the basis of that person's performance of his/her military service or obligation. 38 U.S.C. § 4311(a).

■ Congress has set forth the remedies an employee is entitled to under USERRA. The remedies are as follows: reinstatement, any loss of wages or benefits, and if the employer's actions were willful, the court may require the employer to compensate the employee in an amount equal to the amount of lost wages or benefits as liquidated damages. 38 U.S.C. § 4323(d). The remedies provided by US-

ERRA are essentially equitable in nature. The statute allows for an award of liquidated damages in an amount equal to the lost wages and benefits but only in the event that the court finds the employer's actions to be willful. *Barreto v. ITT World Directories, Inc.*, 62 F.Supp.2d 387, 395–396 (D. Puerto Rico 1999). The statute does not allow for the recovery of damages for mental anguish, pain or suffering, nor does USERRA allow for the recovery of punitive damages. *Id.* The court may award the prevailing party reasonable attorneys' fees, expert witness fees, and other litigation expenses. *See* 38 U.S.C. § 4323(h)(2).

## B. *THE PLAINTIFFS WERE PROMPTLY REEMPLOYED UNDER USERRA*

■ One of the expressed purposes of USERRA is to encourage non-career service in the military by eliminating or minimizing the disadvantages to civilian careers and employment that can result from such service. 38 U.SC. § 4301(a)(1). One of the rights that USERRA provides a returning serviceman is the right to reemployment with his/her same civilian employer upon the completion of military service. As a result, USERRA requires employers, with limited exceptions, to provide "prompt reemployment" upon the employee's completion of military service. 38 U.S.C. § 4301(a)(2). However, the Act does not define what constitutes "prompt reemployment." It is clear that USERRA does not require immediate reemployment but instead "prompt reemployment" which depends upon the facts and circumstances of each particular case.

■ Sykes contends that there is guidance as to what constitutes "prompt reemployment" which can be found in the United States Department of Labor's proposed regulations. The Department of Labor's proposed regulations state that reemploy-ment of a returning veteran within two weeks, absent unusual circumstances, from the time when the service member reapplies for the position meets the prompt reemployment standard. *See* Proposed Regulations, Veterans and Training Services, § 1002.181, 20 C.F.R. Part 1002 Federal Register, Vol. 69, No. 181, p. 56295 (2004). Unfortunately, there is a dearth of case law on this subject. However, the Fifth Circuit Court of Appeals has held that "prompt reemployment" means as soon as practicable under the circumstances of the case. *Rogers v. City of San Antonio*, 392 F.3d 758, 763 (5th Cir.2004). This Court agrees.

### 1. *RON VANDER WAL*

The uncontested facts reveal that Ron Vander Wal was promptly reemployed at Sykes without any unreasonable or undue delay. Vander Wal specifically informed Sykes that he was not available to return to work until May 4, 2004. *See* Deposition of Vander Wal, p. 49. Vander Wal's counsel had demanded his immediate reemployment in a letter dated April 23, 2004. However, that letter failed to address the issue of Vander Wal's availability for work prior to May 4, 2004. Vander Wal was returned to work on May 4, 2004, which was the first day that he indicated on his job application form that he was available for employment at Sykes.

■ Even if one assumes that Vander Wal's attorney's letter to Sykes was a request to return to work prior to May 4, 2004, the Court concludes, as a matter of law, that Vander Wal was promptly reemployed under USERRA's standards. Vander Wal was offered a position four business days after his attorney sent the demand letter to Sykes. He actually returned to work within seven business days of the demand letter. More important, Vander Wal returned to work on May 4,

2004—the first day he indicated he was available for work at Sykes. Under USERRA, Sykes was required to reemploy Vander Wal without any undue delay and the Court finds that they have met this standard based on the undisputed facts in this case. It is clear and undisputed that there was "prompt reemployment" of Vander Wal under the circumstances. The Court concludes, as a matter of law, that Vander Wal's return to work at Sykes on the first day he indicated he was available to work constitutes "prompt reemployment" under USERRA.

### 2. *MICHAEL VENDER–DAHL*

With respect to Michael Vender–Dahl, the uncontested facts reveal that he was also promptly reemployed by Sykes. Vender–Dahl was officially released from military service on April 24, 2004. Thereafter, he completed a job application form at Sykes. While completing the application, Vender–Dahl requested to speak with a representative from the Human Resources Department but no one was available. On April 29, 2004, Cassie Thompson, the Human Resources Director, called Vender–Dahl and offered him a CST position. Thompson requested that Vender–Dahl return to work on May 4, 2004, and a letter was sent overnight delivery to confirm the offer. *See* Deposition of Vender–Dahl, pp. 46–47. As a result, Vender–Dahl was scheduled to return to work seven business days after he completed his application. While there are no definitive guidelines establishing what constitutes "prompt reemployment" under USERRA, Vender–Dahl's return to work within seven business days of the completion of his job application form does not present a factual basis to support the contention that he was not promptly reemployed under USERRA.

██ Vender–Dahl essentially contends that he was available for immediate reemployment on or about April 24, 2004. It is

clear and undisputed that USERRA does not require *immediate* reinstatement following military leave in excess of one year. In this case, it was not realistic for Sykes to reemploy Vender–Dahl immediately. It is undisputed that Sykes needed a reasonable amount of time to make arrangements for Vender–Dahl's return. There had been a reduction-in-force at Sykes due to the loss of a client. This reduction-in-force had a direct impact on Vender–Dahl's employment and was not based on his service in the military. Sykes needed time to identify an account that Vender–Dahl was qualified to work on; to arrange time for his training with respect to that client's account; and to make arrangements for a training session because there were no training classes scheduled during the relevant time period. After organizing a training program for Vender–Dahl, Sykes had to establish account access for him and needed to ensure that the proper software was installed on his computer. The Court concludes, as a matter of law, that Vender–Dahl's return to work at Sykes within seven business days constitutes "prompt reemployment" under the circumstances.

██ To prevail on a claim under the anti-discrimination provisions of USERRA, there must be a showing that there was (1) membership in a uniformed service, (2) denial of reemployment, and (3) that reemployment was denied on the basis of membership in the uniformed service. The uncontested facts do not establish that the military status of Ron Vander Wal or Michael Vender–Dahl was ever even considered by Sykes nor does the evidence support a finding that there was a denial of reemployment. Further, there are no material facts to support the proposition that the minimal delay in reemployment at Sykes was based on the plaintiffs' membership in the uniformed services. As

such, summary judgment is appropriate in this case.

### C. *THE PLAINTIFFS CANNOT ES-TABLISH A CLAIM FOR CON-SPIRACY*

Although the plaintiffs have alleged the existence of a conspiracy, they have failed to name or identify any actor besides Sykes Enterprises, Inc. Only one other actor was ever alleged, namely, defendant Cassie Thompson, but no one outside of the corporate structure was identified or even suggested to have participated in an alleged conspiracy. The plaintiffs have failed to support the claim for conspiracy. *Cross v. General Motors Corp.*, 721 F.2d 1152, 1156 (8th Cir.1983), *citing Baker v. Stuart Broadcasting Corp.*, 505 F.2d 181, 183 (8th Cir.1974)(a corporation and its agent are a single person in the eyes of the law and a corporation cannot conspire with itself). There has been no showing nor even a scintilla of evidence presented which is factually sufficient to support the plaintiffs' claim of conspiracy. More important, the Court has concluded, as a matter of law, that Sykes had provided for the "prompt reemployment" of Ron Vander Wal and Michael Vender–Dahl. As a result, the claim of conspiracy is moot.

For the reasons set forth above, the defendants, Sykes Enterprises, Inc. and Cassie Thompson's Motion for Summary Judgment filed on March 31, 2005, is **GRANTED**.