Brown v. State, No. 613-8-09 Rdcv (Teachout, J., Aug. 10, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                          **CIVIL DIVISION**
**Rutland Unit**                                            **Docket No. 613-8-09 Rdcv**


**DANIEL BROWN,**
      **Plaintiff**

**v.**

**STATE OF VERMONT,**
      **Defendant**


### DECISION
### Defendant's Motion for Summary Judgment, filed February 1, 2012

Defendant State of Vermont moves for summary judgment on Plaintiff Daniel Brown's claims of employment discrimination based on military service pursuant to the Uniformed Services Employment and Re-Employment Rights Act ("USERRA"). Oral argument on the motion was heard on June 12, 2012. Plaintiff was represented by Attorney James G. Levins. The State was represented by Assistant Attorney General Jonathan Rose.


### Facts

As Plaintiff is the nonmoving party, these facts are presented in the light most favorable to him. Plaintiff Daniel Brown was formerly a temporary corrections officer ("TCO") in the employ of the State of Vermont at the Southern State Correctional Facility ("SSCF") in Springfield, Vermont. Plaintiff serves in the Vermont Army National Guard. Plaintiff was hired for the TCO position in December 2008.

Plaintiff successfully completed training at the Vermont Correctional Academy and began work at SSCF in February 2009. Although Plaintiff received positive comments in his evaluations both at the Academy and at SSCF, these evaluations also show that Plaintiff was experiencing difficulties in the position. Various evaluators commented that Plaintiff was unprofessional, disruptive, and had difficult in interacting with inmates.

In late February, SSCF supervisors learned that some officers were Vermont National Guard members who would be deployed to Afghanistan, and compiled a list of all such persons, which included Plaintiff.

On March 9, 2009, Plaintiff received an email stating that he was selected to be interviewed for open positions. On March 12, 2009, Plaintiff was one of eight TCOs to interview for three available interim Corrections Officer I ("COI") positions. Two others were also Guard members. All candidates for these positions submitted a writing sample and resume, and underwent an interview.

All of the interviews were conducted by Security and Operations Supervisor ("SOS") Mark Potanas, Shift Supervisor Michael Arace, and Shift Supervisor Jim Kamel. All of the interviews consisted of the same twelve questions. The panel of supervisors scored each applicant's interviews on the same scale. SOS Potanes relayed the findings of the panel to Superintendent Anita Carbonell, who made the ultimate decision as to who to hire.

Plaintiff was not hired for one of the three interim COI positions. Plaintiff received the lowest interview score of all the candidates who applied. The candidates who were hired had interview scores higher than Plaintiff's and generally had more experience or education. None of the candidates who were Guard members were hired.

After Plaintiff was not hired for one of the COI positions, he had a conversation with COII Kyle Beckwith, the training and recruiting coordinator at SSCF. Although COII Beckwith's role included explaining the recruiting process to employees, he did not make decisions as to who to promote. In the course of this conversation, COII Beckwith told Plaintiff that there would be no reason to promote Plaintiff to one of the full time interim COI positions with benefits if he was leaving in eight months. When Superintendent Carbonell was later informed of this statement, she issued COII Beckwith written feedback reprimanding him for making a "confusing and erroneous" statement and "overstepp[ing] his authority and expertise."

Plaintiff continued to experience difficulties at work, including receiving complaints from inmates about his demeanor and written warnings for being late to work. Supervisors continued to discuss these problems with Plaintiffs, but they often found Plaintiff uncooperative or unreceptive. A field training officer was assigned to monitor Plaintiff's performance and to provide counseling. The field training officer also found Plaintiff unreceptive to feedback.

On May 1, 2009, an incident occurred in which Plaintiff allowed an inmate to leave his cell during a headcount. A supervisor gave Plaintiff a written warning due to this incident and attempted to discuss it with Plaintiff but found him to be insubordinate and not receptive to feedback. This incident led to a review of Plaintiff's performance and ultimately the decision of Superintendent Carbonell, after consultation with Assitant Superintendent Damato and SOS Potanas, to discharge Plaintiff. Plaintiff was discharged on May 4, 2009.

**Analysis**

Plaintiff asserts that both the State's failure to promote him from TCO to interim COI and the State's ultimate termination of him violate the protections that members of the armed forces are entitled to under the Uniformed Services Employment and Re-Employment Rights Act ("USERRA"). The USERRA prohibits discrimination in employment on the basis of military service. The purpose of USERRA is to encourage military service "by eliminating or minimizing the disadvantages to civilian careers;" "to minimize the disruption to the lives" of servicemembers "by providing for the prompt reemployment" of servicemembers; and "to prohibit discrimination" against servicemembers. 38 U.S.C. § 4301 (a).

The operative provision, 38 U.S.C. § 4311, states:

(a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

* * *

(c) An employer shall be considered to have engaged in actions prohibited-

(1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service.

An employee making a claim under USERRA bears the initial burden of showing, by a preponderance of the evidence, that the employee's military service was a "motivating factor" in the adverse employment action. *Sheehan v. Dept. of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001).

An employee may rely on either direct or circumstantial evidence to make this showing. *Id.* at 1014. The totality of the circumstances should be considered, taking into account that direct statements of discrimination are rare, and claims may be based on reasonable inferences from circumstantial evidence. If the employee is able to make the required showing, then the employer has the opportunity to show, by a preponderance of the evidence, that it would have taken the adverse employment action for some other valid reason regardless of the employee's military status. *Id.* at 1013.

3

*Failure to promote*

Plaintiff first argues that the State failed to promote him to the interim COI position because it knew that he would soon be deployed to the Middle East. He relies primarily on the statement by COII Kyle Beckwith to the effect that there would be no reason to give Plaintiff a full-time slot with benefits if he was leaving in eight months. COII Beckwith was not a part of the panel that made the decision to promote other candidates instead of Plaintiff. Rather, the uncontroverted evidence in the record shows that COII Beckwith was disciplined by Superintendent Carbonell for overstepping his authority by making this statement.

The Beckwith statement, considered within the totality of circumstances, is not a sufficient basis upon which Plaintiff can meet the burden of showing that his military service was a "motivating factor" in the adverse employment action. In the related context of an employment discrimination claim under the Vermont Fair Employment Practices Act, the Vermont Supreme Court has held that "stray remarks in the workplace" and "statements by nondecisionmakers" do not constitute direct evidence of an employer's discriminatory intent. *Robertson v. Mylan Labs, Inc.*, 2004 VT 15, ¶ 20. The same principle applies here. COII Beckwith was not a part of the decisionmaking process.

Plaintiff has not shown evidence that this statement was any more than Beckwith's own personal speculation. Plaintiff has not presented evidence that the statement was informed by knowledge of the various candidates' credentials or that Beckwith knew why the promotion decision was made. Particularly in the light of Beckwith's subsequent reprimand for making the statement, there is not a sufficient basis for a reasonable inference that his opinion was endorsed by the actual decisionmakers. This statement is insufficient to show that Plaintiff's military status was a motivating factor in the decision not to promote him.

The State conducted a formalized process in making its decision. Each candidate for the available interim COI positions produced a written statement of career goals, submitted a resume, and underwent an interview with the same three supervisors. The interviews all consisted of the same questions, which were scored on the same scale.

Plaintiff did not have strong qualifications for the position. Of all the candidates, Plaintiff had the least experience at SSCF, having worked there for less than a month. At the conclusion of the interview process, Plaintiff received the lowest score of all the candidates. Additionally, the candidates who were hired generally possessed more experience or education than Plaintiff. All of these facts are pertinent to whether the facts as a whole support a reasonable inference from the Beckwith statement that his military status was a motivating factor in the decision to promote other candidates instead of him. See, e.g., *Becker v. Dept. of Veterans Affairs*, 373 Fed. Appx. 54, 58 (Fed. Cir. 2010) (holding plaintiff failed to meet his burden for a failure-to-promote claim under USERRA

where all applicants were asked the same questions scored on the same scale and the hiring decision was based on those results).

Plaintiff offers evidence that tends to show that the prison was preparing for a large number of staff, including Plaintiff, to deploy overseas. He, however, fails to link this fact to the required showing that his own military status was a motivating factor in the State's decision not to promote him. At best, this evidence shows that the State decisionmakers were aware of Plaintiff's military obligations. Such evidence is necessary, but not sufficient to make out a USERRA claim. Plaintiff must show that his impending military deployment was at least a motivating factor for the fact that he was not promoted. The fact that there was an impending deployment, standing alone, is insufficient.

Similarly, Plaintiff states that he was made to work an unfavorable work schedule. Again, he is unable to show any connection between his unfavorable work schedule and his military status. The work schedule evidence does not support his claim that his military status was a motivating factor in the State's failure to promote him.

*Wrongful termination*

Plaintiff also argues that the State's ultimate decision to terminate him from his TCO position violated USERRA. This argument encounters many of the same difficulties as Plaintiff's failure-to-promote argument. Plaintiff is again unable to make the requisite showing that his military status was a motivating factor in his termination.

Plaintiff attempts to rely on much of the same evidence as in his failure-to-promote claim. But again, none of this evidence shows that the State was motivated by Plaintiff's military status in terminating him. Despite Plaintiff's attempt to point to the comment of COII Beckwith and the atmosphere surrounding the impending military deployment at the prison, the record does not reveal that the State even considered Plaintiff's military status in deciding to terminate him.

Rather, the facts show a long series of performance problems. Although Plaintiff's feedback was not uniformly negative, the record reveals numerous instances of performance issues over the months that he worked at SSCF. Supervisors indicated that Plaintiff had difficulty working with inmates and was unresponsive to criticism. The timing of Plaintiff's ultimate termination follows this string of incidents and supports a reasonable conclusion that the termination was as a result of the accumulation of these events. Specifically, Plaintiff was terminated days after an incident in which he allowed a prisoner to move during a headcount and then clashed with his supervisor about the propriety of his actions. This is the same type of problematic behavior shown throughout the evaluations of Plaintiffs performance.

5

With a work history of performance problems and no circumstances beyond the facts of an upcoming deployment and the termination itself from which an inference can be made of a discriminatory motive, Plaintiff's facts do not support an inference that his military status was a motivating factor in his termination. See, e.g., *Barreto v. ITT World Directories, Inc.*, 62 F. Supp. 2d 387, 392-93 (D.P.R. 1999) (holding that plaintiff failed to meet his burden for a wrongful termination claim under USERRA where record showed that plaintiff, despite having been warned by supervisors multiple times, failed to improve his work performance).

## ORDER

Defendant's Motion for Summary Judgment is *granted*. Defendant's counsel shall prepare a proposed form of judgment.

Dated this 9th day of August, 2012.

_____
Hon. Mary Miles Teachout
Superior Court Judge

6